# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

D. MARIA SCHMIDT, as Personal
Representative for the Estate of Dakotah
Dedios, Deceased; and RICHALINE
DEDIOS,

      Plaintiffs,

vs.                                                                         No. CIV 19-0933 JB\SCY

INTERNATIONAL PLAYTHINGS LLC,
EPOCH COMPANY, LTD., EPOCH
EVERLASTING PLAY, LLC,
WALMART, INC., and MARIE SHORT,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand, filed

November 4, 2020 (Doc. 18).   The Court held a hearing on December 10, 2019.  See Clerk's

Minutes at 1, filed December 10, 2019 (Doc. 34).  The primary issues are: (i) whether the Plaintiffs

-- D. Maria Schmidt and Dedios, as the personal representative for the Estate of Dakotah Dedios

and Richaline Dedios ("Schmidt and Dedios") -- fraudulently joined Defendant Marie Short, a

non-diverse party and the store manager at Defendant Walmart, Inc. ("Walmart"), to defeat federal

diversity jurisdiction, because there are no possible viable claims against Short under New Mexico

law for strict products liability and negligence; and (ii) whether the Defendant Epoch Everlasting

Play, LLC's ("Epoch Everlasting") Notice of Removal, filed October 3, 2019 (Doc. 1), was

procedurally defective, because not all of the Defendants filed their own notices of removal, co-

signed Defendant Epoch's notice of removal, or filed a consent to removal.  The Court concludes

(i) that Epoch Everlasting has shown that there is "no possibility" that Schmidt and Dedios can

establish a cause of action against Short under a theory of strict products liability, because Short is not a seller or supplier, and there is "no possibility" that Schmidt and Dedios can establish a cause of action against Short under a theory of negligence, because there is no applicable duty under New Mexico law; and (ii) that the Notice of Removal is not procedurally defective, because the Notice of Removal satisfies the unanimity rule. Accordingly, because the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), the Court will deny the Motion to Remand.

## FACTUAL BACKGROUND

In the Complaint, Schmidt and Dedios allege that the Defendants, International Playthings LLC; Epoch Company, Ltd. ("Epoch Co."); Epoch Everlasting; Walmart; and Short, "develop, manufacture, market and sell a line of toys under the name 'Calico Critters,' . . . Labrador Twins, . . . equipped with . . . a small baby bottle . . . [and] a small plastic removable pacifier." Complaint for Wrongful Death, Loss of Consortium, Personal Injury, and Punitive Damages ¶¶ 13-15, at 5-6, filed October 3, 2019 (Doc. 1-3)("Complaint"). Schmidt and Dedios allege that "[t]he manufacturer of the Labrador Twins labeled them for children 3 years and up, even though their website specifically states that they can be used by children 2 years of age." Complaint ¶ 18, at 8. Schmidt and Dedios allege that on May 5, 2018, Dedios bought the Calico Critters Labrador Twins toy at a Walmart store in Bernalillo, New Mexico, and that five days later, on May 10, 2018, her child, D.D., who was two years and nine months old at time, "aspirated the loose pacifier toy that came with the Labrador Twins. [D.D.] was taken to the hospital and subsequently was pronounced dead." Complaint ¶¶ 23-24, at 10. Schmidt and Dedios allege that the autopsy report stated that D.D. died "from choking on the loose pacifier toy on May 10, 2018." Complaint ¶ 24, at 10.

## PROCEDURAL BACKGROUND

On August 16, 2019, Schmidt and Dedios filed the Complaint in state court. See Complaint

¶¶ 59-63, at 18-19.  Schmidt and Dedios also filed a demand for jury trial.  See Jury Demand at 20, filed October 3, 2020 (Doc. 1-3).[1]  In the Complaint, Schmidt and Dedios assert four counts against the Defendants: (i) strict products liability; (ii) negligence; (iii) negligence per se; and (iv) breach of implied warranty of merchantability.  See Complaint ¶¶ 27-58, at 11-18.  Schmidt and Dedios seek damages for wrongful death and loss of consortium damages, as well as punitive damages.  See Complaint ¶¶ 58-63, at 17-18.

Schmidt and Dedios served the Complaint upon Short on August 21, 2019.  See Summons at 23-24, filed October 3, 2020 (Doc. 1-3).  Schmidt and Dedios served the Complaint upon International Playthings on September 3, 2019, through the Secretary of State of New Mexico.  See Summons at 37-41.  Schmidt and Dedios served the Complaint upon Epoch Everlasting on September 3, 2019, through the Secretary of State of New Mexico.  See Summons at 42-46.  Schmidt and Dedios served the Complaint upon Epoch Co. on September 3, 2019, through the Secretary of State of New Mexico.  See Summons at 47-51.  On October 2, 2019, counsel for Walmart Inc. accepted service.  See Motion to Remand Memo at 2.  Schmidt and Dedios served the Complaint upon Walmart on October 3, 2019, through its authorized agent in New Mexico.  See Motion to Remand Memo at 1-6.

On October 4, 2020, Epoch Co. moved to dismiss for lack of personal jurisdiction and improper service.  See Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction by Epoch Company, Ltd, filed October 4, 2020 (Doc. 5).  On November 4, 2020, Schmidt voluntarily dismissed Epoch Co. from this action.  See Notice of Voluntary Dismissal Without

---

[1]As part of the Notice of Removal, filed October 3, 2020 (Doc. 1), Epoch Everlasting attached a document -- Docket 1-3 -- that included the Complaint, the Jury Demand, multiple summons, and other documents filed in state court.  See Doc. 1-3.  For convenience, the Court will refer to each separate State court filing by its name and cite to the relevant pages of Doc. 1-3.

Prejudice as to Defendant Epoch Company, Ltd. Only, filed November 4, 2020 (Doc. 20).

1.      **The Notice of Removal and the Amended Notice of Removal.**

On October 3, 2019, Epoch Everlasting filed a Notice of Removal in federal court based on diversity jurisdiction.  See Notice of Removal ¶¶ 3-10, at 1-4.  In the Notice of Removal, Epoch Everlasting alleges that the action is removable to federal court based on diversity jurisdiction because: (i) the amount in controversy exceeds $75,000, "as Plaintiffs allege damages for wrongful death, and because the true parties in interest are diverse," Notice of Removal ¶ 3-10, at 2; and (ii) complete diversity exists between the parties based on their respective citizenship, place of incorporation, and headquarters, and because "Defendant Marie Short, an individual and resident of Rio Rancho, New Mexico, . . . was named in this lawsuit for the sole purpose of destroying complete diversity and to prevent removal. This fraudulent joinder also abrogates application of the forum defendant rule."  Notice of Removal ¶¶ 4-5, at 2.  Epoch Everlasting also alleges that "[a]ll Co-Defendants have consented to removal of this matter."  Notice of Removal ¶ 9, at 4.

The Honorable Steven C. Yarbrough, United States Magistrate Judge for the District of New Mexico, sua sponte found that the Notice of Removal failed to properly allege facts sufficient for diversity jurisdiction.  See Order to Amend at 1-3, filed October 22, 2019 (Doc. 13).  Specifically, Judge Yarbrough found that Epoch Everlasting failed allege the Plaintiffs' citizenship and failed to properly allege the Defendants' citizenship, noting that a limited liability company is different than an incorporated entity for purposes of determining diversity jurisdiction.  See Order to Amend at 1-3.  Judge Yarbrough ordered Epoch Everlasting to amend its Notice of Removal to cure these deficiencies.  See Order to Amend at 3.

Epoch Everlasting filed an the Amended Notice of Removal, alleging: (i) the Plaintiff objectively seeks more than $75,000; (ii) complete diversity exists because: (a) the Plaintiffs,

- 4 -

Richaline Dedios, mother of D.D., and Schmidt, as the personal representative for the estate of

D.D., are citizens of New Mexico; (b) "[n]o Defendant is a citizen or has its principal place of

business in New Mexico. No member of an any LLC defendant is a citizen of New Mexico;" and

(c) the Plaintiff "fraudulently joined Marie Short to defeat diversity jurisdiction," so her citizenship

should be ignored for the purposes of determining diversity. See Amended Notice of Removal ¶¶

5-14, at 2-4, filed November 6, 2019 (Doc 22).   Specifically, as to the Defendants' diversity

requirements, Epoch Everlasting in the Amended Notice of Removal alleges that: (i) "Defendant

Wal-Mart, Inc. is a Delaware Corporation and its principal place of business in . . . Bentonville,

Arkansas"; (ii) "Defendant Epoch Everlasting Play LLC . . . is a limited liability company formed

in Delaware and has its principle place of business in New Jersey.  Its sole member and manager

is Epoch Playthings LLC, which was organized in the state of Delaware"; (iii) "Epoch Playthings

LLC is a wholly owned subsidiary of Epoch Co. Ltd., which is incorporated in Japan and with its

principal place of business in Tokyo, Japan"; and (iv) "International Playthings LLC is not a

separate entity, but is the same company as [Epoch Everlasting]. International Playthings LLC

changed its name to Epoch Everlasting Play LLC in 2017."  Amended Notice of Removal ¶¶ 6-

13, at 2-3.

Epoch Everlasting argues Schmidt and Dedios fraudulently joined Short.  See Amended

Notice of Removal ¶¶ 14-17, at 4-7.  Epoch Everlasting contends fraudulent joinder exists where

"there is no reasonable basis in fact or colorable ground supporting the claim against the joined

defendant, or no real intention in good faith to prosecute the action against the defendant or seek

a joint judgment."  Amended Notice of Removal ¶ 15, at 4 (quoting In re Briscoe, 448 F.3d 201,

217 (3d Cir. 2006)). Epoch Everlasting contends that a store manager has no duty to inspect

products to ensure that they meet state or federal safety guidelines.  See Amended Notice of

Removal ¶ 16, at 5 (citing N.M.R.A., Civ. UJI 13-1414).  Epoch Everlasting points to Short's sworn declaration, where Short states that she was not involved with the sale of the toy at issue and she had no knowledge of any alleged defect in the toy, to support its argument that there is there is no legitimate basis for Schmidt and Dedios' to add Short as a defendant.  See Amended Notice of Removal ¶ 16, at 4-5 (citing Declaration of Marie Short, filed October 3, 2019 (Doc. 1-2)("Decl. Short")).  Epoch Everlasting argues Schmidt and Dedios conceded that Walmart is vicariously liable for acts and omissions of its employees, therefore, Schmidt and Dedios only added Short to defeat diversity.  See Amended Notice of Removal ¶ 16, at 5-6.

Last, the Amended Motion of Removal states: "All Co-Defendants have consented to removal of this matter."  Amended Notice of Removal ¶ 18, at 6.

2.    **The Motion to Remand.**

On November 4, 2020, Schmidt and Dedios moved to remand the case to state court.  See Motion to Remand at 1.  Schmidt and Dedios argue that (i) the Court lacks subject-matter jurisdiction because complete diversity does not exist; and (ii) that the Notice of Removal is procedurally defective, because not all the Defendants had joined or consented to the Notice of Removal under 28 U.S.C. § 1446(b)(2)(A).  See Motion to Remand at 1; Motion to Remand Memo at 2-15.  Schmidt and Dedios contend that complete diversity does not exist, because the Plaintiffs and Short are citizens of New Mexico and Short was not fraudulently joined.  See Motion to Remand Memo at 3.  Schmidt and Dedios contend Short was properly joined because the burden on the Defendants to prove fraudulent joinder is "significant," and Epoch Everlasting does not meet this burden.  Motion to Remand Memo at 4 (quoting Couch v. Astec Industries, Inc., 71 F. Supp. 2d 1145, 1147 (D.N.M. 1999)(Baldock, J.)).  Schmidt and Dedios argue that "[i]t is insufficient to assert that a plaintiff strategically chose to file suit in state court and that her claims

against a non-diverse defendant support that strategy," and aver that "[w]hen faced with an assertion of fraudulent joinder, the plaintiff is not required to prove that she will ultimately succeed on the claims at issue against the non-diverse defendant." Motion to Remand Memo at 4 (citing Couch v. Astec Industries, Inc., 71 F. Supp. 2d at 1147). Schmidt and Dedios insist that Epoch Everlasting, as the removing defendant, bears a substantial burden, because the defendant must "demonstrate[e] that there is no possibility that the plaintiff would be able to establish a cause of action against the party alleged to be fraudulently joined." Motion to Remand Memo at 4-5 (quoting De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1161 (D.N.M. 2015)(Browning, J.)(internal quotations omitted)).

Based on this standard to prove fraudulent joinder, Schmidt and Dedios argue that there is more than a "possibility" that Schmidt and Dedios will be able to establish the claims against Short. Motion to Remand Memo at 4-15 (citing De La Rosa v. Reliable, Inc., 113 F. Supp. 3d at 1161). Schmidt and Dedios contend that Short's acts and omissions as a Walmart store manager -- "acts and omissions that led to the placement and display of the defective product at a toddler's eye level" so that D.D. "was drawn to [it] and was able to access and remove [it] from the shelf" -- constitute a proper claim for strict products liability, because Short "played a role in the chain of distribution of the defective product." Motion to Remand Memo at 4-15. Schmidt and Dedios aver that Short is implicated because "all parties in the chain of distribution of a defective product are strictly liable." Motion to Remand Memo at 7 (quoting Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d 1117, 1129-30 (D.N.M. 2009)(Browning, J.)).

Schmidt and Dedios further argue that the Court should disregard Short's Declaration that she had "no role in any decisions regarding the placement" of the product in the store, "no involvement in any marketing related to the sale of" the product in the store, and "no knowledge

of any alleged safety issues associated" with the product, because Schmidt and Dedios have "had

no opportunity to conduct discovery, to question Defendant Short, or to otherwise challenge her

self-serving declaration."  Motion to Remand Memo at 8 (quoting Decl. Short)).  In the alternative,

Schmidt and Dedios argue that, even if the Court were to accept as true Short's declaration,

Schmidt and Dedios can still establish the claims against Short.  See Motion to Remand Memo at

8-9.  Schmidt and Dedios explain that, even if it is true that Short had no knowledge of the alleged

safety issues associated with the toy, Short is still liable because "a reasonably prudent person in

[Short's] position should have had such knowledge."  Motion to Remand Memo at 8 (emphasis in

the original).

Next, in response to Epoch Everlasting's contention that Short has no duty to Schmidt and

Dedios under New Mexico law, Schmidt and Dedios argue Epoch Everlasting fails to cite "New

Mexico case law for the broad proposition that a store manager owes no duty to customers or

cannot be held liable, under either a strict products liability or negligence theory, for her role in

the sale of a defective product."  See Motion to Remand Memo at 8-9.  Similarly, Schmidt and

Dedios argue there is no case law to support Epoch Everlasting's "suggestion that a plaintiff cannot

sue both a store manager and the corporation for which that store manager works in a single action

-- and that to do so necessarily constitutes fraudulent joinder."  Motion to Remand Memo at 10.

With respect whether there are valid strict liability and negligence claims against Short as a store

manager under New Mexico law, Schmidt and Dedios argue the issue is "one for a New Mexico

state court to analyze upon a proper record -- not for a federal court to analyze upon removal and

a motion to remand." Motion to Remand Memo at 10.

Turning to whether Epoch Everlasting's Notice of Removal was procedurally defective,

Schmidt and Dedios maintain that when a defendant fails to consent to the notice of removal, the

removal petition is procedurally defective, and the Court must remand the case to state court.  See Motion to Remand Memo at 10.  Schmidt and Dedios aver that "'each defendant must independently and unambiguously file notice of its consent to join in the removal within the thirty-day period.'"  Motion to Remand Memo at 12 (quoting McShares, Inc. v. Barry, 979 F. Supp. 1338, 1342 (D. Kan. 1997)(Crow, J.)).  Schmidt and Dedios quote the Honorable Bruce D. Black, United States Judge for the District of New Mexico:

> A valid removal requires the consent of all served defendants.  If a served defendant withholds consent, the removal is procedurally deficient and the parties have thirty days to seek remand.  If the parties do not seek remand within thirty days, the procedural deficiency is waived.  Thus, in order to make informed, timely decisions about remand, parties must be able to tell whether all of the served defendants consented during the thirty-day removal period.

Motion to Remand Memo at 11-12 (quoting State Farm Fire and Cas. Co. v. Dunn-Edwards Corp., 728 F. Supp. 2d 1273, 1277 (D.N.M. 2010)(Black, J.)).  Schmidt and Dedios contend that, under Judge Black's rule in State Farm Fire and Casualty Company v. Dunn-Edwards Corporation, Epoch Everlasting's Notice of Removal was defective because Epoch Everlasting stated only: "All Co-Defendants have consented to removal of this matter" in the Notice of Removal.  Motion to Remand Memo at 14 (quoting Notice of Removal at 4).  Schmidt and Dedios argue that none of Epoch Everlasting's co-defendants filed their own notices of removal, co-signed Epoch Everlasting's notice of removal, or filed a consent to removal.  See Motion to Remand Memo at 14.

On November 4, 2020, the same day Schmidt and Dedios filed the Motion to Remand, Walmart and Short joined Epoch Everlasting's Notice of Removal.  See Defendants Walmart, Inc. and Marie Short's Joinder in Removal at 1, filed November 4, 2020 (Doc 21).

3.      **The Responses.**

On November 18, 2019 Walmart and Short responded to the Motion to Remand, arguing Epoch Everlasting's removal of the case to federal court was appropriate.   See Defendants Walmart, Inc. and Marie Short's Response to Plaintiff's Motion to Remand at 1, filed November 18, 2019 (Doc. 25)("Walmart and Short's Remand Response").   Walmart and Short argue Short was fraudulently joined because all the duties she allegedly breached "are duties derived from products liability law, and they are thus duties imposed on Ms. Short's employer, not Ms. Short as an individual."   Walmart and Short's Remand Response at 1; id. at 4-17.   As to Counts I and II of the Complaint, Walmart and Short point to New Mexico law, arguing that "suppliers of products have various duties to make and sell safe products."   Walmart and Short's Remand Response at 5 (citing N.M.R.A., Civ. UJI 13-1402, 13-406).   Walmart and Short argue that this definition means that a supplier can be held liable under a negligence or a strict liability theory, but the duty does not extend to its employees.   Walmart and Short's Remand Response at 5 (citing N.M.R.A., Civ. UJI 13-1402, 13-406).   Walmart and Short next point to Committee Commentary to the New Mexico's Uniform Jury Instructions 13-1402, which states: "Corporate employees are not liable, absent negligent conduct on their part independent of a corporate failure to provide a product which satisfies the duty of ordinary care or is free from unreasonable risk of injury."   Walmart and Short's Remand Response at 6.   Walmart and Short also argue that for a store manager to be liable for a defective product, that person must actually sell the product at issue, therefore, Walmart, not Short, is the appropriate party for a products liability claim. See Walmart and Short's Remand Response at 6 (citing Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (D.N.M. Sept. 29, 2005)(Browning, J.)).   Walmart and Short argue that the only duties alleged by Schmidt and Dedios "are duties directly related to the sale of products" and that "there is not a single allegation that

- 10 -

Ms. Short breached a duty independent from the duties imposed by products liability law." Walmart and Short's Remand Response at 6-7.

As to Count III -- negligence per se for a violation of 16 C.F.R. § 1500.18 -- Walmart and Short argue that "[i]n order to assert a viable claim for negligence per se, a plaintiff must establish that a defendant violated a statute 'which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly.'" Walmart and Short's Remand Response at 12 (quoting Thompson v. Potter, 2012-NMCA-014, ¶ 32, 268 P.3d 57 (App. 2011)). Walmart and Short maintain that 16 C.F.R. § 1500.18 cannot support a negligence per se claim because the regulation contains "a subjective standard, requiring a fact specific analysis of 'the manufacturer's stated intent (such as on a label) if it is a reasonable one; the advertising, promotion, and marketing of the article; and whether the article is commonly recognized as being intended for children under 3.'" Walmart and Short's Remand Response at 12-13 (quoting 16 C.F.R. § 1501.2). Walmart and Short argue that 16 C.F.R. § 1500.18, therefore, does not support a negligence per se claim. See Walmart and Short's Remand Response at 13.

As to Count IV -- breach of implied warranty of merchantability -- Walmart and Short argue Schmidt and Dedios "must establish that Ms. Short was [i] a seller of goods; [ii] a merchant; and [iii] that she sold the goods at issue," and that Schmidt and Dedios fail to make "a single factual allegation that would support a claim that Ms. Short is a seller, a merchant, or that she sold the goods at issue in this case." Walmart and Short's Remand Response at 14-15 (citing N.M.S.A. §§ 55-2-104, 106(a), -314). Walmart and Short contend (i) a store manager is not a seller goods, (ii) Short did not sell Schmidt and Dedios the toy, rather Schmidt and Dedios bought the from Walmart, and (iii) although, "corporation is responsible for the acts and omissions of its employees, an employee cannot be individually responsible for the acts or omissions of her

employer." Walmart and Short's Remand Response at 15. Walmart and Short conclude that the Court should therefore disregard Short's citizenship for diversity purposes. See Walmart and Short's Remand Response at 1; id. at 4-17.

Next, Walmart and Short argue Epoch Everlasting's Notice of Removal is not procedurally defective because all the Defendants consented to the Notice of Removal. See Walmart and Short's Remand Response at 15. Walmart and Short contend (i) they "filed a notice of joinder within the 30 day period for doing so and had consented in writing to removal even before Epoch filed its notice"; (ii) "Defendant Epoch Company, LTD was dismissed"; and (iii) "Defendant International Playthings LLC is not a separate legal entity -- it is a prior name of Epoch and thus was not required to separately consent (either because it is not an existing entity or because it is Epoch and Epoch's consent constitutes the consent of International Playthings LLC)." Walmart and Short's Remand Response at 15-16. Walmart and Short cite Bellman v. NXP Semiconductors USA, Inc., 248 F. Supp. 3d 1081, 1110 (D.N.M. 2017)(Browning, J.)("Bellman")[2] for the proposition that defects in a notice of removal may be cured "even after the thirty-day removal window has expired," and, conclude, that the Notice of Removal was not defective. Walmart and Short's Remand Response at 16.

The next day, November 19, 2019, fifteen days after Schmidt and Dedios had filed her Notice to Remand, Epoch Everlasting responded to Schmidt and Dedios' Motion to Remand. See

---

[2]In Walmart and Short's Remand Response, the parties provide the following short cite: "Bellman, 248 F. Supp. at 1110," without a prior full citation. Walmart and Short's Remand Response at 16. Both the hyperlink imbedded in the citation and the citation itself in Walmart and Short's Remand Response are citations for Fox v. United States, 248 F. Supp. 1021 (W.D. Wash. 1965), which is inapposite. The Court presumes Walmart and Short intended to cite Bellman v. NXP Semiconductors USA, Inc., 248 F. Supp. 3d 1081, 1110 (D.N.M. 2017)(Browning, J.), which contains the cited quotation.

Defendant Epoch Everlasting Play, LLC's Response in Opposition to Plaintiffs' Motion to Remand at 3-13, filed November 19, 2019 (Doc. 26)("Epoch Everlasting's Remand Response"). Epoch Everlasting cites 28 U.S.C. § 1332(a) for the proposition that a district court has original jurisdiction over cases where the amount in controversy exceeds $75,000, and where the parties are of diverse citizenship. See Epoch Everlasting's Remand Response at 3.  First, Epoch Everlasting asserts the amount in controversy exceeds $75,000.  See Epoch Everlasting's Response at 3.  Second, Epoch Everlasting argues, as do Walmart and Short, that complete diversity of citizenship exists between the properly joined parties, because Schmidt and Dedios fraudulently joined Short in order to defeat diversity.  See Epoch Everlasting's Remand Response at 2-12.  each party's citizenship, Epoch Everlasting asserts: (i) Schmidt and Dedios are residents of New Mexico; (ii) Epoch Everlasting is not a citizen of the State of New Mexico for diversity purposes, under 28 U.S.C. § 1332(c)(1), because Epoch Everlasting is foreign corporation, incorporated under the laws of Delaware, "doing business in all fifty states of the United States, including [the District of New Mexico]," and Epoch Everlasting's principal place of business is Parsippany, New Jersey; (iii) Walmart is not a citizen of the State of New Mexico because Walmart is foreign corporation, incorporated under the laws of Delaware, "doing business in all fifty states of the United States, including [the District of New Mexico]," and Bentonville, Arkansas is Walmart's a principal place of business; and (iv) Short is a resident of New Mexico, but is fraudulently joined, and so her citizenship should be disregarded for diversity purposes. Epoch Everlasting's Remand Response at 4.

Epoch Everlasting avers fraudulent joinder exists "where a party's claims as filed show[] that it in fact had 'no cause of action.'"  Epoch Everlasting's Remand Response at 4 (quoting Brazell v. Waite, 525 F. App'x 878, 882 (10th Cir. 2013)).  Epoch Everlasting maintains that "it

is clear on the face of the Complaint and lack of controverted evidence that there is no possibility for Plaintiffs' claims against Ms. Short to prevail." Epoch Everlasting's Remand Response at 5. Epoch Everlasting argues that, under New Mexico law, officers and employees of corporations such as Short "cannot be held liable for the corporation's torts merely by virtue of the position they hold[,] [r]ather, they are liable only if they directed, controlled, approved, or ratified the activity that led to the injury." Epoch Everlasting's Remand Response at 6-7 (citing Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, 872 P.2d 852; Stinson v. Berry, 1997-NMCA-076, 943 P.2d 129). Epoch Everlasting argues Short did not owe Schmidt and Dedios a duty of care, because "Short did not have actual control of the premises or the items sold in the store nor did she have control over the decision to market and sell those items or where to place and present those items within the store itself." Epoch Everlasting's Remand Response at 7-8 (citing Bejarano v. Autozone, Autozone Stores, Inc., No. 2:12-CV-00598, 2012 WL 13080099, at *5 (D.N.M. July 24, 2012)(Hansen, J.); Austin v. Wal-Mart Stores, Inc., CIV 06-0492 RB/RHS, 2006 WL 8443828, at *2 (D.N.M. Aug. 10, 2006)(Brack, J.)). Epoch Everlasting further argues that Short's "duty to prevent injury to customers did not extend to preventing the sale of products which may or may not be defective in their internal design." Epoch Everlasting's Remand Response at 8. See id. at 9-10 (citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406 (10th Cir. 1958)). Next, Epoch Everlasting points out that "Plaintiffs have not provided controverted evidence that Ms. Short directed the sale of the toy, ratified Walmart's decision to sell the toy, or had any authority to prevent the sale of the toy by Walmart," in further support that "she cannot be held liable for the toy's allegedly negligent design when she had no design authority" or that she had a duty to inspect the toy. Epoch Everlasting's Remand Response at 11.

Last, Epoch Everlasting's Notice of Removal was proper, in part, because, "[e]ven if

served, a co-defendant who is improperly joined need not join in or consent to removal." Epoch Everlasting's Remand Response at 12 (citing Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x 732, 739 (10th Cir. 2010)(stating that "'[a] defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy'")). Epoch Everlasting asserts that, when Epoch Everlasting filed its Notice of Removal, only Epoch Everlasting had been properly served and joined. See Epoch Everlasting's Remand Response at 12. Accordingly, Epoch Everlasting argues that, because Short is an improperly joined party, her consent is not necessary. See Epoch Everlasting's Remand Response at 12. Finally, Epoch Everlasting notes that Schmidt and Dedios' argument that the Notice of Removal is defective is now moot because both Walmart and Short filed a Joinder in Removal. See Epoch Everlasting's Remand Response at 12-13 (citing Defendants Walmart, Inc. and Marie Short's Joinder in Removal).

### 4.   **Schmidt and Dedios' Reply.**

On December 9, 2019 Schmidt and Dedios replied, reiterating their arguments (i) that Short was properly joined, therefore defeating diversity jurisdiction; and (ii) that there were procedural defects in Epoch Everlasting's Notice of Removal that require the Court to remand the case. See Plaintiffs' Reply in Further Support of Their Motion to Remand at 1-22, filed December 9, 2019 (Doc. 33)("Reply in Support of Motion to Remand"). Schmidt and Dedios concede, however, that they do not have claims of negligence per se or breach of implied warranty of merchantability against Short, even though the Complaint listed Short under both these counts. See Reply in Support of Motion to Remand at 7 n.1.

Frist, Schmidt and Dedios argue the standard for showing fraudulent joinder is high. See Reply in Support of Motion to Remand at 2 (citing Dutcher v. Matheson, 733 F.3d 980, 989 (10th

Cir. 2013)(describing the "high hurdle" a defendant must surpass to show fraudulent joinder)). Schmidt and Dedios cite the Court's opinion in Bellman, 248 F. Supp. 3d at 1114 for the proposition that "to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that there is no possibility that the plaintiff would be able to establish a cause of action against the party alleged to be fraudulently joined."  Reply in Support of Motion to Remand at 2.  Schmidt and Dedios clarify that the standard for fraudulent joinder is "more exacting" than the standard under rule 12(b)(6).  Reply in Support of Motion to Remand at 2 (citing Bellman, 248 F. Supp. 3d at 1112 ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.").

Next, Schmidt and Dedios argue that, contrary to Epoch Everlasting's assertion that the Court must resolve factual disputes regarding Short's conduct in favor of Walmart, Short, and Epoch, that a court should not "pre-try, as a matter of course, doubtful issues of fact to determine removability."  Reply in Support of Motion to Remand at 3 (quoting Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d 879, 882 (10th Cir. 1967)).  Schmidt and Dedios argue a court can only look beyond the pleadings at the motion to remand if a fact central to the viability of a claim can "easily be disproved if not true."  Reply in Support of Motion to Remand at 4 (quoting Smallwood v. Ill. Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004)(en banc)).  Schmidt and Dedios contend that Short's Declaration fails to easily disprove any central facts, and therefore is of no avail at this stage in the proceedings.  See Reply in Support of Motion to Remand at 5.  Schmidt and Dedios argue that Short's Declaration "offers conclusory and self-serving denials of some -- but not all -- of the well-pleaded allegations in Plaintiffs' complaint."  Reply in Support of Motion to Remand at 5.  For instance, Schmidt and Dedios note that the Complaint alleges that Short was "responsible

- 16 -

and [had] the duty to understand the types of merchandize being sold in the store and the manner in which such merchandise is placed, advertised, and displayed," Short's Declaration alleges she "had no role in any decisions regarding the placement of Calico Critters toys at the Store," and "had no involvement in any marketing related to the sale of Calico Critters toy [sic] at the Store." Reply in Support of Motion to Remand at 5-6 (citing Complaint ¶ 20, at 9; Decl. Short ¶ 7, at 1). Schmidt and Dedios argue, therefore, that Short's Declaration does not provide "the type of undisputed extrinsic evidence that supports an inquiry beyond the pleadings at the motion to remand stage." Reply in Support of Motion to Remand at 5-6 (citing Cumpian v. Alcoa World Alumina, L.L.C., 910 F.3d 216, 221 (5th Cir. 2018)(holding that "[a] conclusory statement that a claim is false . . . is not a 'discrete and undisputed fact'" for purposes of analyzing fraudulent joinder)(citation omitted)).

Next, Schmidt and Dedios argue they will prevail on their strict products liability and negligence claims against Short. See Reply in Support of Motion to Remand at 6. First, Schmidt and Dedios contend that because New Mexico law is not clear whether a store manager can be sued in a products liability case, remand is not appropriate. See Reply in Support of Motion to Remand at 6-7 (citing Bellman, 248 F. Supp. 3d at 1113 ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.")(internal quotations omitted)). Second, Schmidt and Dedios argue they have a valid strict products liability claim against Short. See Reply in Support of Motion to Remand at 7. Schmidt and Dedios argue that under New Mexico law Short is a "supplier" in the chain of distribution and is therefore liable under a strict products liability claim. Reply in Support of Motion to Remand at 7. Schmidt and Dedios contend that Epoch Everlasting cites no authority to the contrary. See Reply in Support of Motion to Remand

at 7-8.  Schmidt and Dedios argue that, even though an employee cannot be liable for the actions

of its employer, an employee can be held liable for the employee's own actions.  See Reply in

Support of Motion to Remand at 8-9 (citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406,

408-09 (10th Cir. 1958)("It is the general rule that if an officer or agent of a corporation directs or

participates actively in [a tort] . . . he is personally liable . . . .  But merely being an officer or agent

of a corporation does not render one personally liable for a tortious act of the corporation.")).

Schmidt and Dedios contend that the Court should disregard Epoch Everlasting's citations to cases

not interpreting New Mexico law and should not decide whether New Mexico law allows claims

against employees on a motion to remand.  See Reply in Support of Motion to Remand at 9-10

(citing Provencio v. Ford Motor Co., 2005 WL 3662957, at *9 ("This stage -- a motion to remand

--is not the proper place to decide legal issues that the state courts have not decided. That the

Plaintiffs may not be right is not the standard; rather, there must be no possibility the Plaintiffs

have a claim against" the Defendant.)).  Schmidt and Dedios argue that, because there is a possible

strict products liability claim against Short, they did not fraudulently join Short.  See Reply in

Support of Motion to Remand at 11 (citing Sakura v. Simplicity, Inc., 2011 WL 1935617, at *2

(D.N.M. Apr. 7, 2011)(Johnson, J.)("While Plaintiffs do not point to any New Mexico cases

specifically approving of the liability of a store manager for selling a defective product, Defendants

have certainly not shown that it is impossible that Plaintiffs could recover against" the

Defendant.)(internal quotations omitted); Spataro v. Depuy Orthopaedics, Inc., 2009 WL 382617,

at *8 (D.N.M. Jan. 9, 2009)(Herrera, J.)(noting that, even if  "a New Mexico court, in the future,

may decide that a sales representative like Dillard cannot be held strictly liable for a defective

medical device," it would not be appropriate for the court to "engage in [a] multi-part policy

analysis")(internal quotations omitted); Baeza v. Tibbetts, 2006 WL 2863486, at *5 (D.N.M. July

7, 2006)(Vasquez. J.)(holding that, "[a]t a minimum," the plaintiffs' claim of strict products liability against a sales representative, who submitted an affidavit disclaiming direct sales contact with the plaintiffs, "will require an intricate analysis of state law" and that, therefore, joinder of the representative was not fraudulent)).

Next, Schmidt and Dedios argue there is a possible claim of negligence against Short, meaning remand is appropriate. See Reply in Support of Motion to Remand at 12. Schmidt and Dedios contend that "Walmart and Short had or should have had knowledge that products marketed and distributed for use by toddlers should not contain small pieces that a toddler might put into her mouth," and, therefore, should have conducted an inspection of the toys marketed to toddlers for choking hazards. See Reply in Support of Motion to Remand at 12 (citing N.M.R.A., Civ. UJI 13-1414 (stating that a retailer "who has knowledge which would lead a reasonably prudent person to undertake an inspection of the product before selling it is charged with knowledge of that which a reasonable inspection would disclose")). In addition to a duty to inspect, Schmidt and Dedios claim Short had a duty to use ordinary care as a store manager to avoid a foreseeable risk of injury to customers, meaning Short had a duty to ensure that products were safely displayed within the store. See Reply in Support of Motion to Remand at 13 (citing N.M.R.A., Civ. UJI 13-1402).

Schmidt and Dedios seek to distinguish the cases that Epoch Everlasting cites. See Reply in Support of Motion to Remand at 13; Reply in Support of Motion to Remand at 11. Schmidt and Dedios argue that unlike in Bejarano v. AutoZone Stores, Inc., 2012 WL 13080099, where an employee was "relieved of liability for harm caused by dangerous conditions which he did not have the authority to alter," Short had control of the placement of the toys. See Reply in Support of Motion to Remand at 13. Schmidt and Dedios argue that, under New Mexico law, an employee

is liable for negligence where the employee had actual control over the premises.  See Reply in

Support of Motion to Remand at 14 (citing Klopp v. Wackenhut Corp., 824 P.2d 293 (N.M. 1992);

Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 408-09 (10th Cir. 1958); Austin v. Wal-Mart

Stores, Inc., 2006 WL 8443828). Schmidt and Dedios argue that Short, as the store manager, had

control over the display of merchandise and allowed the toy to be displayed at a toddler's eye level.

See Reply in Support of Motion to Remand at 15.  Schmidt and Dedios contend, therefore, that

they have a viable negligence claim against Short, meaning she was properly joined and complete

diversity does not exist.  See Reply in Support of Motion to Remand at 15.

Last, Schmidt and Dedios argue that procedural defects in the Notice of Removal also

require remand.  See Reply in Support of Motion to Remand at 15.  Schmidt and Dedios contend

that, at the time Epoch Everlasting removed the case to federal court, Epoch Everlasting

inaccurately claimed that all of the Co-Defendants had consented to removal.  See Reply in Support

of Motion to Remand at 17.  Schmidt and Dedios maintain that Epoch Everlasting clarified that

International Playthings had not consented only after they filed their Motion to Remand, but that

its consent was unnecessary, and that Walmart and Short only filed a notice of consent after the

Motion to Remand.  See Reply in Support of Motion to Remand at 17.  Schmidt and Dedios argue

that, therefore, the Notice of Removal failed the "unanimity rule," where "each defendant served

at the time of removal must independently and unambiguously file written notice of its consent."

Reply in Support of Motion to Remand at 18 (citing McShares, Inc. v. Barry, 979 F. Supp. at 1342;

State Farm Fire and Cas. Co. v. Dunn-Edwards Corp., 728 F. Supp. 2d at 1277).  Schmidt and

Dedios acknowledge, however, "that this Court has viewed the boundaries of the unanimity rule

differently, declining to require co-defendants to file independent and unambiguous written notices

of their consent to removal."  Reply in Support of Motion to Remand at 18 (citing Tresco, Inc. v.

Cont'l Cas. Co., 727 F. Supp. 2d 1243, 1255 (D.N.M. 2010)(Browning, J.)).  Schmidt and Dedios argue that, nonetheless, a narrower view of the consent requirement should apply here, because Schmidt and Dedios had no information regarding the consent or lack of consent of any other defendant.  See Reply in Support of Motion to Remand at 19.  Regarding Epoch Everlasting's assertion that International Playthings LLC changed its name to Epoch Everlasting Play LLC in 2017, Schmidt and Dedios argue that International Playthings remains a defendant because "it is likely that Defendant International Playthings was a separate entity that participated in the conduct Plaintiffs allege in their complaint. It likely carried its own liability insurance, and it may have had interests in conflict with those of Defendant Epoch."  Reply in Support of Motion to Remand at 19-20.  Next, Schmidt and Dedios argue that Walmart and Short's delay in providing their consent "deprived Plaintiffs of any knowledge of their consent until after they had moved for remand" and caused  confusion.  Reply in Support of Motion to Remand at 21 (citing Centura Health Corp. v. Agnew, No. 18-CV-00569-RBJ, 2018 WL 3454976, at *5 (D. Colo. July 18, 2018)(Jackson, J.)(concluding that, "though there might not be a definitive statutory deadline within which defendants must obtain unanimous consent to remove a case, the de facto deadline must be sometime before the end of the thirty day period in which plaintiffs may seek to remand the case").  Schmidt and Dedios also claim they "are disadvantaged" because they have "inaccurate or incomplete information regarding the existence or nature of defendants' consent."  Reply in Support of Motion to Remand at 21.  Schmidt and Dedios conclude that, because Short is a proper defendant and because the Motion to Remove is procedurally defective, the Court should remand the case to state court.  See Reply in Support of Motion to Remand at 21.

###   5.   **The Hearing.**

The next day, December 10, 2019, the Court held a hearing on the Motion to Remand.  See

Clerk's Minutes at 1, filed December 10, 2019 (Doc. 34).  The Court stated that it would first deal with the issue of diversity jurisdiction and the fraudulent joinder, and then with the alleged deficiencies in the Notice of Removal.  See Transcript of Hearing at 5:9-12 (taken December 10, 2019)(Court)("Tr.").[3]   The Court asked for appearances, and counsel for Epoch Everlasting, Gregory Biehler, stated that International Playthings had changed its name to Epoch Everlasting, and that Epoch Company had been dismissed, meaning neither of them were represented at the hearing.  See Tr. at 3:18-4:13.  In response, Schmidt and Dedios acknowledged that they understood Epoch Everlasting's position to be that International Playthings is a not separate entity and is now doing business as Epoch Everlasting, but Schmidt and Dedios stated "that might be an issue later."  Tr. at 4:14-20 (Court, Kaufman).  Schmidt and Dedios stated later, when describing the nature of the complaint, that:

> When you go to their website, which is INTPLAY.com, International Playthings.com, you're taken to the Epoch website.  So there is some relationship there.  It may be that they changed their name a few years ago.  But a lot of this case has to do with what happened a few years ago, in terms of the design and marketing of the toy.  And so as of yet, that entity hasn't been dismissed.  We believe they're still in the case.

Tr. at 7:14-22 (Kaufman).

After Schmidt and Dedios clarified the nature of the Complaint, the Court asked whether the principals of International Playthings, Epoch Company, and Epoch Everlasting were diverse from Schmidt and Dedios.  See Tr. at 8:16-19 (Court).  Schmidt and Dedios replied they were diverse from the Defendants International Playthings, Epoch Company, and Epoch Everlasting

---

[3]The Court's citations to the transcripts of each hearing in this Memorandum Opinion and Order refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

and that what was important for the hearing was the nature of the claims against Short.  See Tr. at

8:12-9:12 (Kaufman).  Schmidt and Dedios stated there were two claims against Short: strict

products liability and negligence, both arising out of Short's role in stocking, merchandising,

marketing, and selling toys to children under three years old.  See Tr. at 9:1-5 (Kaufman).  Schmidt

and Dedios contended that the Defendants were

> conflat[ing] the [strict products liability] and the negligence claims and they sort of
> misconstrue them into something they're not.  For example, Epoch and Walmart
> both suggest that our products liabilities claim has to do with the design of the toy.
> The fact that the toy was unreasonably dangerous.  That's not really our claim.  Our
> claim is that Short was in the chain of distribution of a dangerous toy and under
> New Mexico law every person or entity in the distribution chain is subject to
> products liability.  On the other hand our negligence claim is a little different . . . .
> [Short] failed to act as a reasonable prudent person would.

Tr. at 9:6-20 (Kaufman).  The Court stated that extending strict products liability to an employee

who did not sell a product seemed to be stretching the law, and asked whether the negligence

theory of liability was the stronger claim against Short.  See Tr. at 10:16-11:4 (Court).  Schmidt

and Dedios agreed that their negligence claim was the stronger claim, but they clarified that they

thought that the strict products liabilities claim would survive the fraudulent joinder analysis.  See

Tr. at 11:5-7 (Kaufman).  The Court asked if any jurisdiction, including New Mexico, had allowed

a strict products liability claim against an employee, and if not, whether the Court should attempt

to predict the New Mexico Supreme Court's decision in situation where it has yet to rule.  See Tr.

at 11:8-19 (Court).  Schmidt and Dedios replied that they did not have a case outside of the

fraudulent joinder context, and that either the Court or a state court would have to decide whether

their claims of strict products liability and negligence encompassed properly Short's actions after

the Court had issued an opinion regarding the Motion to Remand.  See Tr. at 11:12-24 (Kaufman).

Schmidt and Dedios clarified that their allegations against Short were not based on the

manufacturing method of the toy, but that a toy that poses a "choking hazard shouldn't be placed in a store in a place where a two year old can see and ask for it."  Tr. at 14:21-15:3 (Kaufman).

Next, Schmidt and Dedios stated that the Court should look beyond the motions to Short's Declaration.  See Tr. at 15:19-16:6.  Schmidt and Dedios argued that Short's Declaration did not "absolve[] Defendant Short from liability" and left many key facts unanswered, meaning there was a possibility the claims against her could be met, meaning Short was properly joined.  Tr. at 16:19-18:3 (Kaufman).  The Court then asked what specific facts Schmidt and Dedios alleged that Short, as a store manager, was personally involved with the decision to place the toys on the shelves.  See Tr. at 22:5-15 (Court).  Schmidt and Dedios responded that: "We have undisputed facts that she was the manager of the store.  We have allegation[s] about . . . exactly what she did in terms of the stocking and [merchandising] and marketing."  Tr. at 22:19-23 (Kaufman).  And "from a standard of review standpoint for Your Honor [there] is a blanket denial matched up against allegations that we believe are narrowly specific, the blanket denial doesn't mean there is no possibility that we could ever assert a claim against Defendant Short."  Tr. at 22:25-23:5 (Kaufman).

The Court then asked what duty Short had as an employee of a distributer to customers, expressing doubt that an employee can be sued under strict product liability, but recognizing that employees of corporations are frequently sued in negligence actions.  See Tr. at 20:7-21 (Kaufman, Court).  Schmidt and Dedios responded that Short has a duty to behave as a reasonably prudent person when stocking merchandise.  See Tr. at 20:7-21 (Kaufman).

Epoch Everlasting responded, asserting that the factual allegations against Short in the Complaint are "very, very limited," Tr. at 26:9 (Biehler), and that, based on the

> affidavit of Marie Short, it's very clear that she had no individual involvement in
> this case, and there is an absence of evidence to support a factual allegation against
> Ms. Short.  . . . [T]here is no allegation that she personally directed controlled

> approved or ratified any action with regard to the [claims of strict products liability
> and negligence.]

Tr. at 25:4-20 (Biehler).  Epoch Everlasting argued that, because there are no possible claims

against Short, the case was properly in federal court.  See Tr. at 27:3-11 (Biehler).  Epoch

Everlasting concluded that it was "not aware of any authority which would establish personal

liability for a manager when they have otherwise no involvement other than just being a manager"

and it was "not aware of any authority which would establish a duty simply because of their title"

as a store manager.  Tr. at 29:1-9 (Biehler).

Next, Short argued that both for negligence and strict products liability, "it is the entity that

supplies the product, and only the entity that supplies the product, that can be held liable," not the

employee.  Tr. at 37:8-13 (Harrison).  Short contended that New Mexico law defines supply

narrowly as the transfer of possession, and that a supplier is "any person who for any purpose or

in any manner gives possession of chattel for another's use."  Tr. at 37:15-20 (Harrison).  Short

explained that

> any entity engaged in the business of selling or otherwise distributing products is
> strictly liable for distributing a defective product.  So the key for strict liability and
> for negligence is transfer of title or possession of the toy.  Plaintiffs' theory that
> manager Short had some responsibility for placing the product in the store is not a
> transfer of possession.

Tr. at 36:22-38:4 (Harrison).  Short contended that Short never possessed, and that the activities

that Schmidt and Dedios allege Short had "a duty to perform, are Walmart's duties.  Walmart sold

the toy.  Walmart puts it on the shelves.  That's not individual store manager's responsibility, so

because she's not part of supply chain, there cannot be a strict liability claim."  Tr. at 38:25-36:5

(Harrison).  Short argued that, under New Mexico law, the duty of care for a defective product

rests solely with the corporate entity, not the employee, and that "no alternative theory of liability

[can] bring in a store employee" when the employee was not directly involved with the sale of the toy.  Tr. at 39:10-40:1 (Harrison).  Similarly, Short argued that the duty to market, merchandise, and sell products in a manner that will not present a danger to the customers is a duty that applies only to the supplier, not the employee.  See Tr. at 42:14-18 (Harrison).

Schmidt and Dedios responded, contending that Short is a supplier under New Mexico law at the fraudulent joinder stage of proceedings.  See Tr. at 46:3-15 (Kaufman).  Schmidt and Dedios argued that the Complaint contains sufficient factual allegations that Short had some personal involvement in the transaction related to the sale of the toy to survive the fraudulent joinder analysis.  See Tr. at 47:18-48:15 (Kaufman).  Schmidt and Dedios next argued that Short, as a supplier, has a duty to inspect products if she has knowledge that would lead a reasonable prudent person to undertake an inspection.  See Tr. at 49:13-25 (Kaufman).

Next, the Court asked Schmidt and Dedios explain their argument that there are procedural defects in the Notice of Removal.  See Tr. at 50:21-22 (Court).  Schmidt and Dedios stated their argument was based on the unanimity rule, but admitted that "we don't hang our hat entirely on this point." Tr. at 50:24-51:2 (Kaufman).  Schmidt and Dedios argued that, although Epoch Everlasting had claimed that all the Defendants had consented to removal in the Notice of Approval, there was no separate indication whether this was true by the time the Schmidt and Dedios filed their Motion to Remand.  See Tr. 51:2-52:13 (Kaufman).  Schmidt and Dedios argued that the lack of confirmed consent to removal violated the requirements of the unanimity rule articulated by the Judge Black in State Farm Fire and Cas. Co. v. Dunn-Edwards Corp., 728 F. Supp. 2d at 1277.  See Tr. at 52: 8-13 (Kaufman).  When the Court noted that the Court does not apply the same standard as Judge Black, Schmidt and Dedios asked the Court to take a fresh look at the unanimous consent requirement.  See Tr. at 52:16-25 (Court, Kaufman).  When the Court

stated it would not deviate from its own rule, Schmidt and Dedios explained that when they filed their Motion to Remand, they did not know which judge would hear their case, so they made the argument as a precaution.  <u>See</u> Tr. at 53:14-25 (Court, Kaufman).  The Court clarified that it understood that many district courts applied varying formalities to show unanimous consent to removal not explicitly stated in the United States Code, but that, under its rule, the Court trusts lawyers in federal court to represent whether there was unanimous consent without requiring additional formal requirements. <u>See</u> Tr. at 54:5-22 (Court).  The Court explained that it did not think it is a huge burden for a party, if it doubts whether there was unanimous consent, to contact the other parties to confirm a unanimous consent representation.  <u>See</u> Tr. at 55:23-56:8 (Court). Schmidt and Dedios responded they understood that under the Court's rule, the alleged "procedural defect doesn't win the day."  Tr. 56:12-15 at (Kaufman).  The Court concluded that, based on the United States Court of Appeals for the Tenth Circuit's standard for fraudulent joinder and New Mexico tort law, it was inclined to deny the Motion to Remand and keep the case in federal court. <u>See</u> Tr. at 58:20-59:20 (Court).

Next, the Court addressed Epoch Company's motion to dismiss, which the parties agreed was moot because Epoch Company had been dismissed voluntarily by Schmidt and Dedios.  <u>See</u> Tr. at 61:3-25 (Harrison, Court, Kaufman).  <u>See also</u> Notice of Voluntary Dismissal Without Prejudice as to Defendant Epoch Company, Ltd. Only at 1.  Schmidt and Dedios clarified that they had dismissed voluntarily Epoch Company, but that "we may end up needing them in this case later but for now they're out."  Tr. at 62:5-8 (Kaufman).  The Court asked if counsel for Epoch Company could file a notice of withdrawal to clean up the docket, and counsel for Schmidt and

Dedios indicated that would contact counsel for Epoch Company.[4]  See Tr. at 62:9-63:2 (Court, Kaufman, Biehler).

**LAW REGARDING DIVERSITY JURISDICTION**

Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  As the Court has previously explained, "[t]he Supreme Court of the United States has described [the] statutory diversity requirement [in 28 U.S.C. § 1332(a)] as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N. R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court will discuss the two requirements in turn.

1.      **Diversity of Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines citizenship.  See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL

---

[4]To date, counsel for Epoch Company has not filed a notice of withdrawal.

553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth.  See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'"  Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).  See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1065 (D.N.M. 2019)(Browning, J.); De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1150 (D.N.M. 2015)(Browning, J.); Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1213-14 (D.N.M. 2013)(Browning, J.).

## 2.   **Amount in Controversy.**

The statutory amount-in-controversy requirement, $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold.  Martinez v. Martinez,

No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Charles A. Wright, et al., Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation may appear complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court may then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a

plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play."  529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 554.  The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation."  Dart Cherokee Basin Operating Co., LLP v. Owens, 135 S. Ct. at 554.

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court.'")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)).  In a case with multiple defendants, there must be unanimous consent to removal; a single defendant may spoil removal and keep the case in state court.  See 28 U.S.C. §

1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action, and their consent is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643-44 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068, 1078-79 (D.N.M. 2007)(Browning, J.).  "A plaintiff objecting to the removal may file a motion asking the district court to remand the case to state court."  Huffman v. Saul Holdings LP, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the original jurisdiction requirements, 28 U.S.C. § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  The Tenth Circuit has noted:

> that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)(alterations in original)(quoting 28 U.S.C. § 1441(b)(2))).  The forum-defendant rule applies to cases removed under only diversity jurisdiction; a defendant may remove a case brought against it in its home

state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot

be removed if it began with a nondiverse party or a forum-citizen defendant, and only later came

to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed

the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979);[5]

Flores-Duenas v. Briones, 2013 U.S. Dist. LEXIS 173620, at *12 n.6, *26 (D.N.M.

2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule); or (ii) the

removal-spoiling party was fraudulently joined or procedurally misjoined.

     1.     **The Presumption Against Removal.**

     Federal courts are courts of limited jurisdiction; thus, there is a presumption against

removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v. Kmart

Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333

(10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, 2009 U.S.

Dist. LEXIS 45672, at *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed,

and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must

establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail

v. Deere & Co., 529 F.3d at 953.  See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *4 ("As

the removing party, the defendant bears the burden of proving all jurisdictional facts and of

establishing a right to removal.").  See also McPhail v. Deere & Co., 529 F.3d at 955 ("It would

---

     [5]In DeBry v. Transamerica Corp., the Tenth Circuit explained:

     The general effect of the [voluntary-involuntary] test is that a cause cannot be
     removed where the removability is a result of some development other than a
     voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from
     the defendant or the result of a court order rendered on the merits of the case.

601 F.2d at 488 (citation omitted).

have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional facts . . . .").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014).  This strict construction and presumption against removal should not, however, be interpreted as hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *2 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")(citing Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *12).

### 2.    The Procedural Requirements of Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal.  "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *5.  A removal that does not comply with the express statutory requirements is defective and must be remanded to state court.  See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United State Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such

action." 28 U.S.C. § 1446(a).  Such notice of removal is proper if filed within thirty days from the

date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-

69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period

to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself"

that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir.

1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose

a duty to investigate and determine removability where the initial pleading indicates that the right

to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[6]

---

[6]In 2011, Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5.

On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [see Pub. L. No. 112-63, 125 Stat. 758 (2011)].

. . . .

Section 103 of the Act makes several changes to removal and remand procedures. 28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state court from which the action was removed. The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action.  [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or

"When a civil action is removed solely under section 1441(a), [the standard removal statute, which excludes multiparty, multiforum jurisdiction,] all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The failure of all defendants to consent to removal will result in remand.  See Bonadeo v. Lujan, 2009 WL 1324119, at *5-6 (D.N.M. Apr. 30, 2009)(Browning, J.); McEntire v. Kmart Corp., 2010 WL 553443, at *4 (D.N.M. Feb. 9, 2010)(Browning, J.)("A notice of removal fails if this procedural requirement is not met.").  The rule of unanimity applies to all defendants, whether they are

---

receipt of initial pleading) to seek removal.  Earlier-served defendants may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].  These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharm., Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants have sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal.  These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recovery of damages in excess of the amount demanded.  Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5 (quoting 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107SA-1 to 107SA-2 (3d ed. 2013)).

required parties under rule 19 or merely proper parties under rule 20.  See Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998)(stating that the general removal rule "require[s] all defendants to join in the removal petition."); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant, Interstate Book Company, did not join in the petition for removal and the petition was thus procedurally defective."); Bonadeo v. Lujan, 2009 WL 1324119, at *5 ("Although the procedure for a notice of removal set out in 28 U.S.C. § 1446(b) is couched in terms of a single defendant, courts have held that all defendants must join a removal petition or removal will be defective.")(citing Cornwall v. Robinson, 654 F.2d at 686). The defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

### 3.   Amendment of the Notice of Removal.

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court."  Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including that the notice of removal failed to properly allege diversity of citizenship.  See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . .").  The Seventh Circuit nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.   See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."   Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).   The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.   See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.   In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."   2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02).   Further, in Thompson v. Intel Corp., the Court permitted the

defendant, Intel Corp., to amend its notice of removal to add missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives. It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount.  In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon

14 C. Wright & A. Miller, Federal Practice and Procedure § 3733 (Rev. 4th ed. 2020)(footnotes omitted).  Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."  16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013).  Thus, where the defendant asserts diversity jurisdiction as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts that satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.  See Carrillo v. MCS Indus., Inc., 2012 WL 5378300, at *14 (D.N.M. 2012)(Browning, J.)(permitting party to amend its notice of removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provides greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal").  Cf. New Mexico ex rel. Balderas v.

Valley Meat Co., 2015 WL 3544288, at *25 (D.N.M. 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that was not raised in the notice of removal).

    **4.**    **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., 2013 U.S. Dist. LEXIS 156746, at *14-17 (D.N.M. 2013)(Browning, J.).  A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1214 (D.N.M. 2011)(Browning, J.)(quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent."  Baeza v. Tibbetts, 2006 WL 2863486, at *3.  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."  Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal

by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder.").[7] "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1146-47. Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

---

[7]The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 has persuasive value.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[8] -- suffices to establish fraudulent joinder, but it is not required.  See McLeod v. Cities Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available.").  In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85.  The Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.  The plaintiff died when his car collided with a freight train.  See 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  See 378 F.2d at 881.  It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the

---

[8]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals

for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably

Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in

original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The

Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for

dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits

determination that, absent fraudulent joinder, should be left to the state court where the action

commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The

Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm

Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only

after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be

disregarded for purposes of diversity jurisdiction."  977 F.2d at 853.

     In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different

articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is

asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might

succeed in at least one claim against the non-diverse defendant."  Nerad v. AstraZeneca

Pharmaceuticals, Inc., 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393

(5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim

need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."

Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995)).  The Griggs opinion later restates that test as follows --
>
> > Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.
>
> 181 F.3d at 699 (emphasis added).  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the absence of any possibility that the opposing party has stated a claim under state law."   16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved."   Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original).  The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d 1117 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims. See Allen v. Allstate Ins. Co., 2008 U.S. Dist. LEXIS 108948 (D.N.M. 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, 2005 U.S. Dist. LEXIS 39012, at *25 (D.N.M. 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d at 1129.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 525 F. App'x. at 881 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d at

85; Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, and Stuart T. Matheson, a Utah citizen. See 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants. See 733 F.3d at 983. The Honorable Ted Stewart, United States District Judge for the District of Utah, agreed that the plaintiffs had been fraudulently joined, concluding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with the district court's characterization of Utah law, finding instead that, in the case on which the defendants relied, the Supreme Court of Utah "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services." 733 F.3d at 988. In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case. See Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249). In Cuevas v. BAC Home Loans Servicing, LP, the Fifth Circuit states:

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an instate defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.] If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants. There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants. Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations and internal quotation marks omitted).

Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, it is likely that it would approve this additional explanation of the fraudulent joinder standard. The Court will accordingly use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant. Cf. Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined). No case

sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate.  See, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence.")(citations omitted).

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

**LAW REGARDING DIVERSITY JURISDICTION AND CHOICE OF LAW**

When a court's jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332, the court should look to the forum state's choice-of-law rules to determine which state's substantive law to apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005).  In New Mexico, choice-of-law analysis is a two-step process.  See Mosely v. Titus, 762 F. Supp. 2d 1298, 1314 (D.N.M. 2010)(Browning, J.)(citing Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 14, 142 P.3d 374, 377).  "First, the Court must characterize the 'area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue.'"  Mosely v. Titus, 762 F. Supp. 2d at 1314 (quoting Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 11, 142 P.3d at 377).  The next step is to apply New Mexico's choice-of-law rule.  See Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶

15, 142 P.3d at 377).

"In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place." Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Torres v. State, 1995-NMSC-025, ¶ 13, 894 P.2d 386, 390). The place of the wrong is the location of the last act necessary to complete the injury. See Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Torres v. State, 1995-NMSC-025, ¶ 13, 894 P.2d at 390). "Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred." Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing First Nat'l Bank v. Benson, 1976-NMCA-072, ¶ 6, 553 P.2d 1288, 1289).

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Tr. Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[9] If the Court finds only an

---

[9]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson

opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will

consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by

the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court

decision." Mosley v. Titus, 762 F. Supp. 2d at 1332 (noting that, where the only opinion on point

is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district,

is to predict what the Supreme Court of New Mexico would do if the case were presented to

it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that,

"[w]here no controlling state decision exists, the federal court must attempt to predict what the

state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions

rendered by lower courts in the relevant state")).[10]  The Court may also rely on decisions by the

---

Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1247 n.30 (D.N.M. 2014)(Browning, J.).  Courts should be reticent to formulate an Erie prediction that conflicts with state court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial and appellate courts.  The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[10]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of

Tenth Circuit interpreting New Mexico law.  See <u>Anderson Living Trust v. WPX Energy Prod.,</u>

--------

> the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.
>
> . . . .
>
> We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.
>
> . . . .
>
> The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

<u>Fid. Union Trust Co. v. Field</u>, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 (citing <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 159 (1948)).  <u>See</u> 17A James Wm. Moore et al., <u>Moore's Federal Practice</u> § 124.20 (3d ed. 1999)("<u>Moore's</u>")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

LLC, 27 F. Supp. 3d at 1243 & n.30. Ultimately, "the Court's task is to predict what the state supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666. Accord Mosley v. Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at 665-66).

## **NEW MEXICO LAW REGARDING STRICT PRODUCTS LIABILITY**

New Mexico has adopted the basis for products liability found in Restatement (Second) of Torts § 402A (1965). See Stang v. Hertz Corp., 1972-NMSC-031, 83 N.M. 730, 497 P.2d 732. The policy underpinnings supporting imposition of strict liability on product manufacturers and suppliers include

> [i] placing the cost of injuries caused by defective products on the manufacturer who is in a better position to pass the true product cost on to all distributors, retailers, and consumers of the product; [ii] relieving the injured plaintiff of the onerous burden of establishing the manufacturer's negligence; [iii] providing full chain of supply protection; and, [iv] in the interest of fairness, providing relief against the manufacturer who -- while perhaps innocent of negligence -- cast the defective product into the stream of commerce and profited thereby.

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 22, 120 N.M. 372, 902 P.2d 54, 57-58.[11] See

---

[11]The Supreme Court of New Mexico explained in more detail that:

> The policy of risk- or cost-distribution continues to serve as a primary basis for imposing strict products liability. . . . In addition to the cost-distribution rationale . . . other courts have approved specifically the rationale that imposing strict liability relieves plaintiffs of the burden of proving ordinary negligence under circumstances in which such negligence is likely to be present but difficult to prove. . . . The third policy cited for the imposition of strict liability is that suppliers who otherwise might not be liable because of a passive role in the chain of supply should be encouraged to select reputable and responsible manufacturers who generally design and construct safe products and who generally accept financial responsibility for injuries caused by their defective products. . . . Fourth and finally, imposing strict products liability serves the interests of fairness. . . . The fairness rationale embodies a normative judgment that plaintiffs injured by an unreasonably dangerous product should be compensated for their injuries. At the heart of this judgment lies the conclusion that although the manufacturer has provided a

Smith ex rel. Smith v. Bryco Arms, 2001-NMCA-090, ¶ 12, 131 N.M. 87, 33 P.3d 638, 644

(reiterating the same four principles).

"Under the 'product liability' claim, a supplier in the business of putting a product on the

market is liable for harm caused by an unreasonable risk of injury resulting from a condition of

the product or from a manner of its use."  N.M.R.A., Civ. UJI 13-1406.  See Stang v. Hertz Corp.,

1972-NMSC-031, ¶ 6, 497 P.2d 732, 734;  Trujillo v. Berry, 1987-NMCA-072, ¶ 5 n.1, 738 P.2d

1331, 1333 n.1 (stating that "the purpose behind the strict products liability doctrine is to allow an

injured user . . . to recover against a supplier . . . without the requirement of proving negligence.").

For a plaintiff to recover under strict products liability, the plaintiff must prove:

> (1)     that the product was sold in a defective condition unreasonably dangerous
> to the user or consumer or to his property;
>
> (2)     that the seller was engaged in the business of selling such a product; and
>
> (3)     that the product was expected to and did reach the consumer without
> substantial change in the condition in which it was sold.

Standhardt v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.  "Seller" is not an

exclusive, restrictive term for identifying potential defendants in a strict products liability action.

See N.M.R.A., Civ. UJI 13-1406 cmt.  New Mexico's Uniform Jury Instructions use the term

"supplier" to identify a liable party under strict products liability.  N.M.R.A., Civ. UJI 13-1406

cmt.   The committee commentary to the jury instruction states that "certain commercial

---

> valuable service by supplying the public with a product that it wants or needs, it is
> more fair that the cost of an unreasonable risk of harm lie with the product and its
> possibly innocent manufacturer than it is to visit the entire loss upon the often
> unsuspecting consumer who has relied upon the expertise of the manufacturer when
> selecting the injury-producing product.

1995-NMSC-043, ¶ 15-18, 120 N.M. 372, 902 P.2d at 57-58 (internal citations omitted).

promotions or other transactions do not involve the business of selling a product, [thus] the committee chose 'business of putting the product on the market'" rather than simply "seller." N.M.R.A., Civ. UJI 13-1406 cmt.  The committee stated that "supplier" captures the Supreme Court of New Mexico's rationale for adopting strict products liability better than "seller," because holding those who put a defective product on the market liable serves the risk-balancing goal of strict products liability.  N.M.R.A., Civ. UJI 13-1406 cmt. (citing Escola v. Coca Cola Bottling Co., 150 P.2d 436, 440-41 (Cal. 1944) for its discussion of risk-distribution, in which the Supreme Court of California states that: "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inhere in defective products that reach the market").

While the Supreme Court of New Mexico has allowed plaintiffs to recover from manufacturers, retailers, and wholesalers, New Mexico courts have specifically declined to hold an employer strictly liable for harm caused by a product that employees use in their course of work. Compare AALCO Mfg. Co. v. City of Española, 1980-NMSC-088, ¶¶ 3-6, 618 P.2d 1230, 1231 (stating that strict liability applies to manufacturers, wholesalers, and retailers), with Trujillo v. Sonic Drive-In/Merritt, 1996-NMCA-106, ¶ 29, 924 P.2d 1371, 1377 ("[W]e are not persuaded that, under the doctrine of strict products liability, Employer would be considered the supplier . . . thus making it strictly liable for injuries caused by a defect in [an ice cream machine]."). In Trujillo v. Sonic Drive-In/Merritt, the Court of Appeals of New Mexico cited N.M.R.A., Civ. UJI 13-1406, and held that an employer could not be held strictly liable for the injuries a defective ice-cream machine caused to employees, because the employer was not a "supplier" of the machine. 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1377-78. The Court of Appeals of New Mexico distinguished a prior case that held that the operator of a car wash could be strictly liable for the injuries that

machinery used at the car wash inflicted on a customer.  See 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1378 (distinguishing Trujillo v. Berry (holding that a car-wash operator may be strictly liable for injuries caused by machinery used on its property, if a trial court determines that the car-wash operator was a "supplier" of the defective machine)).  The Court of Appeals of New Mexico explained that the prior case "would only have [imposed strict products liability] if the car-wash defendant was later determined by the trial court to be a supplier," a determination which the trial court did not make in that case.  1996-NMCA-106, ¶ 29, 924 P.2d at 1378.  The Court of Appeals of New Mexico ruled, therefore, that the employer was not strictly liable for owning a defective machine which inflicted injuries on an employee while the employee operated it.  See 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1378.

The Court has interpreted New Mexico strict-products liability law to foreclose recovery against parties that do not place an allegedly defective product on the market.  See Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (D.N.M. 2005)(Browning, J.).  The Court explained that, in Arenivas v. Continental Oil Co., 1983-NMCA-104, 692 P.2d 31, an operator and part-owner of an oil field was not the supplier of a pumping unit used on the land, because it "did not in any way place the pumping unit in the stream of commerce."  Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (quoting Arenivas v. Continental Oil Co., 1983-NMCA-104, ¶ 15, 692 P.2d at 34).  The Court also explained that, in Livingston v. Begay, 1982-NMSC-121, 652 P.2d 734, the Supreme Court of New Mexico concluded that "a motel operator is not strictly liable for defects in the fixtures and furnishings of the rooms he holds out to the public," because the motel operator has not introduced those items into the "stream of commerce."  Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (quoting Livingston v. Begay, 1982-NMSC-121, ¶ 29, 652 P.2d at 739).  "The thread that binds these cases is that, in each case, the alleged supplier did not sell the

defective product to anyone."   Provencio v. Ford Motor Co., 2005 WL 3662957, at *8.

Accordingly, a party who does not sell or otherwise place an allegedly defective product in the

stream of commerce may not be strictly liable for any alleged harm the product caused, and, thus,

may not be jointly and severally liable for harm the product causes under New Mexico's strict

products liability law.   See Livingston v. Begay, 98 N.M. at 716-17, 652 P.2d at 739.

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a

plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the

breach being a cause-in-fact and proximate cause of the plaintiff's damages.   See Coffey v. United

States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac,

2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86).   "In New Mexico, negligence encompasses the

concepts of foreseeability of harm to the person injured and of a duty of care toward that person."

Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825, overruled on other grounds by

Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249.   Generally, negligence is a question of

fact for the jury.   See Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729.

"A finding of negligence, however, is dependent upon the existence of a duty on the part of the

defendant."   Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729.   "Whether a

duty exists is a question of law for the courts to decide."   Schear v. Bd. of Cnty Comm'rs, 1984-

NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).   Once courts recognize that a duty exists, that

duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of

harm to an individual or class of persons."   Baxter v. Noce, 1988-NMSC-024, ¶ 11, 752 P.2d 240,

243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the

inquiry into whether the defendant owes a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186.  New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84.  "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'"  Reichert v. Atler, 1994-NMSC-056, ¶ 11, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194.  "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in

light of all surrounding circumstances of the present case . . . ."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause[12] of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It need not be the only cause, nor the last nor nearest cause."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## ANALYSIS

Epoch Everlastings invokes federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the basis for removing this case, arguing that "complete diversity of citizenship" exists between the properly joined parties.  Notice of Removal ¶¶ 5-13, at 2-3.  Epoch Everlasting contends that Schmidt and Dedios fraudulently joined Short, a non-diverse Defendant, and the Court should therefore discount her citizenship for removal under diversity jurisdiction.  See Notice of Removal ¶ 14-17, at 3-6 (citing Taylor v. King, No. 5:12-CV-1, 2012 WL 3257528, at *4 (W.D. Ky. Aug. 8, 2012)(Russell, J.)).  Having "pierce[d] the pleadings, consider[ed] the entire record, and determine[d] the basis of joinder by any means available," Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85 (citations omitted), the Court concludes that Epoch Everlasting has shown that there is "no

---

[12]The 2004 amendments to Uniform Jury Instruction 13-305 eliminated the word "proximate" within the instruction.  See Use Note, N.M. Rul. Amend. Civ. UJI 13-305.  The drafters added, however, that the change was "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause."  Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305.

possibility" that Schmidt and Dedios can establish a cause of action against Short, Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  Accordingly, because Epoch Everlasting has met the "exacting" standard for fraudulent joinder, Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2, the Court concludes that it has subject matter jurisdiction pursuant to diversity jurisdiction, see 28 U.S.C. § 1332.

A defendant may remove a civil action brought in state court to federal court if "the district courts of the United States have original jurisdiction" over the action.  28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, there is a "presumption against removal jurisdiction."  Anderson v. Lehman Bros. Bank, FSB, 528 Fed. App'x. 793, 795 (10th Cir. 2013)(citing Laughlin v. Kmart Corp., 50 F.3d at 873).  A defendant seeking removal has the burden of proof to establish that federal court jurisdiction is proper "by a preponderance of the evidence," McPhail v. Deere & Co., 529 F.3d at 953, and "courts must deny such jurisdiction if not affirmatively apparent on the record," Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 Fed. App'x. at 778.

Original diversity jurisdiction under 28 U.S.C. § 1332(a), the asserted basis for removal here, requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00.  See Johnson v. Rodrigues (Orozco), 226 F.3d at 1107.  Complete diversity of citizenship "exists only if no plaintiff and no defendant are citizens of the same state." Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014).  For diversity jurisdiction purposes, "a person is a citizen of a state if the person is domiciled in that state," i.e., if the "person resides there and intends to remain there indefinitely."  Middleton v. Stephenson, 749 F.3d at 1200 (citing Crowley v. Glaze, 710 F.2d at 678).  See Miss. Band of Choctaw Indians v. Holyfield, 490

U.S. 30, 48 (1989).  A corporation is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'"  Gadlin v. Sybron Int'l Corp., 222 F.3d at 799 (quoting 28 U.S.C. § 1332(c)(1)).  In determining a corporation's principal place of business, "a court should look to the 'total activity of the company' or the 'totality of the circumstances,' considering 'the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations.'"  Gadlin v. Sybron Int'l Corp., 222 F.3d at 799 (quoting Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 915 & n.2 (10th Cir. 1993)).

Here, it is undisputed that the parties are not completely diverse.  Regarding the Plaintiffs, the Complaint alleges, and Epoch Everlasting agrees, that (i) Schmidt, as the Personal Representative for the Estate of D.D., deceased, is a citizen of the State of New Mexico, see Complaint ¶ 2, 23, at 3, 10; Amended Notice of Removal ¶¶ 6-7, at 2 (citing 28 U.S.C. § 1332(c)(2)("The legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.")); and (ii) "[R.] Dedios is an individual and citizen of the State of New Mexico and resident [of] Jicarillo, New Mexico,"  Complaint ¶ 2, at 3; Amended Notice of Removal ¶ 6, at 2.  Regarding the Defendants, the parties agree that Walmart is not a citizen of New Mexico: Schmidt and Dedios allege that Walmart "is a foreign profit corporation registered to do business in New Mexico," Complaint ¶ 6, at 4, and Epoch Everlasting alleges Walmart is "a Delaware Corporation and its principal place of business in in Bentonville, Arkansas," Amended Notice of Removal ¶ 11, at 3. Regarding Epoch Everlasting Play LLC, the parties agree it is a limited liability company formed in Delaware and has its principle place of business in New Jersey, see Complaint ¶ 5, at 3 (stating this allegation); Amended Notice of Removal ¶ 12, at 3 (agreeing and adding that "[i]ts sole

member and manager is Epoch Playthings LLC").[13]  Regarding International Playthings LLC, the parties agree that it is not a citizen of the New Mexico: Schmidt and Dedios allege that it is a New Jersey limited liability company, with its principal office in New Jersey, Complaint ¶ 3, at 3; Epoch Everlasting alleges that "International Playthings LLC changed its name to Epoch Everlasting Play LLC in 2017," Amended Notice of Removal ¶ 12, at 3 (citing State of Delaware Certificate of Amendment, filed November 6, 2019 (Doc. 22-2)("Certificate of Amended Name from International Playthings LLC to Epoch Everlasting Play LLC")).  Regarding Short, the parties agree that she is a citizen of New Mexico.  See Complaint ¶ 7, at 4 (stating this allegation); Amended Notice of Removal ¶ 14, at 3-4 (agreeing).  Accordingly, although the Plaintiffs, Epoch Everlasting, and Walmart are completely diverse, the Plaintiffs and Short are all citizens of New Mexico and are thus non-diverse.[14]  On these facts, the Court lacks subject-matter jurisdiction

---

[13]The Amended Notice of Removal alleges "Epoch Playthings LLC is a wholly owned subsidiary of Epoch Co. Ltd., which is incorporated in Japan and with its principal place of business in Tokyo, Japan."  Amended Notice of Removal ¶ 12, at 3.  Epoch Company was dismissed from the case, see Notice of Voluntary Dismissal Without Prejudice as to Defendant Epoch Company, Ltd. Only.

[14]The Court also notes that Short is a citizen of the forum state in which this action was originally filed.  See Complaint ¶ 7, at 4  The "forum-defendant rule" articulated in 28 U.S.C. § 1441(b)(2) provides as an additional requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Brazell v. Waite, 525 Fed. App'x at 884 (quoting 28 U.S.C. § 1441(b)(2))(alterations in original)(internal quotation marks omitted).    The forum-defendant rule, however, "is not jurisdictional and may therefore be waived."  Brazell v. Waite, 525 Fed. App'x at 884 (citing Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006)).  See Bank of Am., N.A. v. Lebreton, 2015 WL 2226266, at *34, 2015 U.S. Dist. LEXIS 64339, *99-103 (D.N.M. 2015)(Browning, J.)(concluding that the forum-defendant rule is procedural, not jurisdictional, and citing cases demonstrating that "the overwhelming majority of courts have concluded that the forum-defendant rule is procedural").  Here, Schmidt and Dedios have moved to remand the case and have thus not waived the forum-defendant rule.  See Motion to Remand at 1.  Accordingly, because Short is a "forum defendant," her presence in the suit prevents removal to federal court -- even if diversity were established -- unless the Defendants can demonstrate that the Plaintiffs

under 28 U.S.C. § 1332(a)(1), unless an exception exists.  See Johnson v. Rodrigues (Orozco), 226 F.3d at 1107.

Epoch Everlasting argues that the Court has diversity jurisdiction, because Schmidt and Dedios fraudulently joined Short to defeat diversity jurisdiction.  See Notice of Removal ¶¶ 14-17, at 3-6.  Epoch Everlasting argues that "[u]nder the fraudulent doctrine, the citizenship of a person against whom the plaintiff has no genuine claim -- a person whom the plaintiff has joined in what in effect is bad faith  -- can be ignored."   Notice of Removal ¶ 17, at 6 (citing Taylor v. King, 2012 WL 3257528, at *4 (emphasis in the original).  Here, Epoch Everlasting contends, "Ms. Short had no role in any issue related to the sale of Calico Critters toys and had no knowledge of any alleged defect . . . .  Plaintiffs' addition of Ms. Short was thus clearly intended solely to defeat diversity, not to assert some viable claim that might exist against her as an individual." Notice of Removal ¶ 14, at 5.  The Court, therefore, must determine whether the Schmidt and Dedios fraudulently joined Short.

"Fraudulent joinder need not involve actual fraud in the technical sense." Anderson v. Lehman Bros. Bank, FSB, 528 F. App'x 793, 795 (10th Cir. 2013)(unpublished); Brazell v. Waite, 525 F. App'x 878, 881 (10th Cir. 2013)(unpublished).[15]  Rather, fraudulent joinder is an exception

---

fraudulently joined Short.

[15]The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

to the complete diversity requirement, which a defendant may invoke if it can demonstrate that the plaintiff fraudulently joined a non-diverse defendant to defeat diversity jurisdiction. See Anderson v. Lehman Bros. Bank, FSB, 528 Fed. App'x. at 795 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85).   Fraudulent joinder exists if: (i) there is "actual fraud in the pleading of jurisdictional facts"; or (ii) the plaintiff is unable to "establish a cause of action against the non-diverse party in state court."  Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249)(internal quotation marks omitted).   The no-cause-of-action test requires that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp.  2d at 1124–25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4–5). "[S]tated differently," the no-possibility standard "means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an instate defendant." Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573)(internal quotation marks omitted).  Accord Nerad v. AstraZeneca Pharms., Inc., 203 Fed. App'x. at 913 ("[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant.")(citing Badon v. RJR Nabisco, Inc., 224 F.3d at 393).

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."  Dutcher v. Matheson, 733 F.3d at 988 (citing Pampillonia v. RJR Nabisco, Inc., 138 F.3d at 461)(internal quotation marks

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes Anderson v. Lehman Bros. Bank, FSB, 528 F. App'x at 795 and Brazell v. Waite, 525 F. App'x at 881 provide persuasive value.

omitted).  See Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. at 152 ("[T]he showing must be such as compels the conclusion that the joinder is without right and made in bad faith."). Moreover, whether a party is fraudulently joined is a "jurisdictional inquiry," Bio-Tec Envtl., LLC v. Adams, 792 F. Supp.  2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247)(internal quotation marks omitted), that requires a reviewing court to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publications, Inc., 329 F.2d at 85 (internal citations omitted). If a court determines that joinder of the non-diverse party is fraudulent, the court may disregard that party and retain jurisdiction over the case.  See Baeza v. Tibbetts, 2006 WL 2863486, at *1.

Here, Epoch Everlasting does not allege actual fraud, instead Epoch Everlasting challenges the joinder of Short under the second prong, arguing there is no legal basis under New Mexico law for a claim of either strict products liability or negligence against Short.  See Notice of Removal ¶¶ 14-17, at 3-6.  Accordingly, Epoch Everlasting has the "heavy burden," Dutcher v. Matheson, 733 F.3d at 988 (citation omitted), of demonstrating that there is "no possibility" that Schmidt and Dedios can establish a cause of action against Short in state court, Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d at 1124–25.  The Court's objective, however, "is not to pre-try the merits of the plaintiff's claims. . . .  'A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.'"  Brazell v. Waite, 525 Fed. App'x. at 881 (alteration omitted)(quoting Batoff v. State Farm Insurance Co., 977 F.2d at 853).  At the same time, the Court is not "compelled to believe whatever the plaintiff says in his complaint."  Brazell v. Waite, 525 Fed. App'x. at 881. The Court will address first Schmidt and Dedios' strict products liability claim, second the negligence claim, and third whether the Notice of Removal was procedurally defective.  The Court

concludes that (i) Epoch Everlasting has shown that there is "no possibility" that the Schmidt and Dedios can establish a cause of action against Short under a theory of strict products liability, because Short is not a seller or supplier; (ii) Epoch Everlasting has shown that there is "no possibility" that the Schmidt and Dedios can establish a cause of action against Short under a theory of negligence, because there is no applicable duty under New Mexico law; and (iii) the Notice of Removal is not procedurally defective, because it satisfies the unanimity rule. The Court concludes, therefore, that Short was fraudulently joined, and accordingly, the Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

I.   **THERE IS NO "POSSIBLY VIABLE" CLAIM UNDER NEW MEXICO LAW AGAINST SHORT ON A THEORY OF STRICT PRODUCTS LIABILITY, BECAUSE (I) A STORE MANAGER IS NOT A SUPPLIER OR SELLER; (II) THERE IS NO POSSIBILITY THAT THE POLICY GOALS OF STRICT PRODUCTS LIABILITY WOULD EXTEND LIABILITY TO A STORE MANAGER; AND (III) NO OTHER JURISDICTIONS SUGGEST THAT A COURT CAN HOLD A STORE MANAGER STRICTLY LIABLE.**

The Court concludes that Schmidt and Dedios do not have a "possibly viable" strict products liability claim under New Mexico law against Short in her role as a store manager. Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2. First, Short, as a store manager, is not a seller or supplier. Second, there is no possibility that the Supreme Court of New Mexico would extend strict product liability to include a store manager under based on extend strict product liability's goal of risk- or cost-distribution. Third, no other jurisdictions have concluded that a store manager is strictly liable.

A.   **SHORT IS NOT A SELLER OR SUPPLIER UNDER NEW MEXICO LAW; THE COURT, THEREFORE, CANNOT HOLD SHORT LIABLE UNDER STRICT PRODUCTS LIABILITY.**

In the Complaint, Schmidt and Dedios assert a strict products liability claim against Short. See Complaint ¶¶ 27-35, at 11-13. Schmidt and Dedios argue that a store manager such as Short

is liable under a theory of strict products liability "because she played a role in the chain of distribution of the defective product."  Motion to Remand at 7.  Schmidt and Dedios generally allege that Short is a "manufacturer[]/supplier[] and retailer[] in the business of putting the toy in question on the market and [is] therefore liable for harm caused by an unreasonable risk of injury resulting from a condition of those products or from the manner of their use."  Complaint ¶ 28, at 11.  The Court concludes that these allegations fail to state a "possibly viable" claim against Short on a theory of strict products liability under New Mexico law, because Short is not a supplier or seller.  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.

Under New Mexico law, for Schmidt and Dedios to recover under strict products liability, they must prove:  (i) that the toy was sold in a defective condition; (ii) "that the seller was engaged in the business of selling" the toy; and (iii) the toy "was expected to and did reach the consumer without substantial change in the condition in which it was sold."  Standhardt v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.  The Defendants argue that there is "no possibility," Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d at 1124-25, that Schmidt and Dedios can establish that Short was a "seller was engaged in the business of selling" the toy the purposes of fraudulent joinder, see Epoch Everlasting's Remand Response at 6-13 (disputing that Short had a duty to Schmidt and Dedios, but not disputing that the toy was defective, or that it reached Schmidt and Dedios); Walmart and Short's Remand Response at 5-11 (disputing whether a store manager can be considered a supplier or seller, but not arguing that there is no possibility the toy was defective or disputing that it reached Schmidt and Dedios).  As to the first and third elements of strict products liability, the Court concludes that Schmidt and Dedios have demonstrated that there

is a possibility that the toy was defective,[16] and that the toy reached D.D. "without substantial change in the condition in which it was sold."[17]   Standhardt v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.  Turning to the second element of strict products liability, Schmidt and Dedios admit that, as "general matter, an employee cannot be held individually liable for the negligence of the corporation for which she works.  Stated differently, while an employee's negligence can be imputed to her employer under the doctrine of respondeat superior, the inverse is not true."  Reply at 8 (citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 408-09 (10th Cir. 1958)("[M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation."); N.M.R.A., Civ. UJI 13-1402).  Because Short cannot

---

[16]The Defendants dispute that the toy was defective, see Answer to Complaint, filed October 17, 2019 (Doc. 11)("Epoch Everlasting's Answer"); Defendant Walmart, Inc.'s Answer to Plaintiffs' Complaint for Wrongful Death, Loss of Consortium, Personal Injury, and Punitive Damages, filed November 7, 2019 (Doc. 23)("Walmart's Answer"); however, the Court concludes that Schmidt and Dedios have alleged sufficient facts that there is possibility the toy was defective. The Complaint alleges that the toy -- a Calico Critter Labrador Twins -- are "flocked animal figures that are toys for children.  . . . The Yellow Labrador Twins . . . are equipped with two small, loose accessories." Complaint ¶¶ 13-15, at 5-6.  The Complaint alleges that "flocked animal figures" are listed "as articles intended for use by children under 3 years.  16 C.F.R. 1501.2.  Any toy or other article intended for use by children under 3 years of age represents a choking, aspiration or ingestion hazard because of small parts is banned."  Complaint ¶ 16, at 6.  The Complaint further alleges that the Labrador Twins are improperly "labeled . . . for children 3 years and up even though their website specifically states they can be used by children 2 years of age," and that the small accessories represent a severe risk to children.  Complaint ¶¶ 17-18, at 7-8.  Because Schmidt and Dedios make specific factual allegations as to the toy's defects, there is some possibility they can prove this element of strict products liability.

[17]There is no dispute that the toy reached D.D.   See Epoch Everlasting's Answer; Walmart's Answer.  The Complaint alleges that R. Dedios bought the toy at Walmart on May 5, 2018 and that "[o]n May 10, 2018 [D.D.] was playing with the Labrador Twins at her home in Jicarilla, New Mexico when she aspirated on the loose pacifier toy that came with the Labrador Twins."  Complaint ¶ 23-24, at 10.  Based on these factual allegations there is more than a possibility that the toy reached D.D. "without substantial change in the condition in which it was sold."  Standhardt v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.

be held liable for her employer's negligence, she can only be held strictly liable if she, as the store

manager, is a "seller" or "supplier" "engaged in the business of selling" the product.  Standhardt

v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.

"Seller" is not an exclusive, restrictive term for identifying potential defendants in a strict

products liability action.  See N.M.R.A., Civ. UJI 13-1406 & cmt.  New Mexico's Uniform Jury

Instructions use the term "supplier" to identify a liable party under strict products liability, and the

term is used with particular purpose.  N.M.R.A., Civ. UJI 13-1406 cmt.  The committee

commentary to the jury instruction states that "certain commercial promotions or other transactions

do not involve 'the business of selling' a product, [thus] the committee chose 'business of putting

the product on the market'" rather than simply "seller."  N.M.R.A., Civ. UJI 13-1406 cmt.  The

committee states that "supplier" captures the Supreme Court of New Mexico's rationale for

adopting strict products liability better than "seller," because holding those who put a defective

product on the market liable serves the risk-balancing goal of strict products liability.  N.M.R.A.,

Civ. UJI 13-1406 cmt. (citing Escola v. Coca Cola Bottling Co., 24 Cal. 2d 453, 462, 150 P.2d

436, 440-41 (Cal. 1944)(Traynor, J., concurring), for its discussion of risk-distribution, in which

the Supreme Court of California states that "public policy demands that responsibility be fixed

wherever it will most effectively reduce the hazards to life and health inherent in defective products

that reach the market").

Although Walmart properly can be considered a seller or supplier, there is no possibility

under New Mexico strict products liability law that Walmart's store manager can be considered a

seller or supplier, because a store employee is not "engaged in the business of selling or otherwise

distributing products."  Spectron Dev. Lab. v. Am. Hollow Boring Co., 1997-NMCA-025, 936

P.2d 852 (citation omitted).  See Parker v. St. Vincent Hosp., 1996-NMCA-070, ¶ 4, 919 P.2d

1104, 1106 (citing Restatement (Third) of Torts § 1 (1998)("One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.")); N.M.R.A., Civ. UJI 13-1406 ("[A] supplier in the business of putting a product on the market.").   Although Schmidt and Dedios allege that Short was a store manager at Walmart at the time of the incident, Complaint ¶ 20, at 9, they admit that "she didn't interact directly with the buyers," Reply in Support of Motion to Remand at 9.  Schmidt and Dedios explain that: "[a]lthough Defendant Short did not personally sell the product at issue in this case to the Dedios family, Plaintiffs allege that her individual conduct -- specifically in regard to the merchandising, placement, and display of the product at a toddler's eye level -- encouraged its purchase."  Reply in Support of Motion to Remand at 11 n. 2. Schmidt and Dedios allege that, as the Walmart store manager, Short was "responsible for all operations of the store including the merchandising and placement of products in the store." Complaint ¶ 21, at 9.  Based on these allegations, at most, an employee of a supplier facilitates the transfer of products from the supplier to the consumer, but without more involvement in the distribution of products, the limited allegation that an employee "encourage[s] [a product's] purchase" by "merchandising, plac[ing], and display[ing] . . . the product," Reply in Support of Motion to Remand at 11 n. 2; see Complaint ¶ 21, at 9,[18] does not turn that employee into a supplier

---

[18]Schmidt and Dedios explain: "Although Defendant Short did not personally sell the product at issue in this case to the Dedios family, Plaintiffs allege that her individual conduct -- specifically in regard to the merchandising, placement, and display of the product at a toddler's eye level -- encouraged its purchase."  Reply in Support of Motion to Remand at 11 n. 2.  Schmidt and Dedios allege that, as the Walmart store manager, Short was "responsible for all operations of the store including the merchandising and placement of products in the store.  The store manager is responsible and has the duty to understand the types of merchandise being sold in the store and the manner in which such merchandise is placed, advertised, and displayed."  Complaint ¶ 21, at 9.

subject to liability, because New Mexico strict-products liability law does not allow recovery against parties that do not place an allegedly defective product on the market.  See Provencio v. Ford Motor Co., 2005 WL 3662957, at *8.

The cases that Schmidt and Dedios cite are of no aid because there is no possibility that Short is a party in the chain of distribution.  See Motion to Remand at 7 (citing Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1129–30; Parker v. St. Vincent Hosp., 1996-NMCA-070, ¶ 4, 919 P.2d 1104, 1106)).  For instance, Schmidt and Dedios correctly note that under New Mexico strict liabilities law, "all parties in the chain of distribution of a defective product are strictly liable."  Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1129–30.  See Parker v. St. Vincent Hosp., 1996-NMCA-070, ¶ 4, 919 P.2d at 1106 ("Ordinarily, any entity engaged in the business of selling or otherwise distributing products is strictly liable for distributing a defective product.").  Under New Mexico law, the chain of distribution includes manufacturers, retailers, wholesalers, and suppliers.  See AALCO Mfg. Co. v. City of Espanola, 1980-NMSC-088, ¶¶ 3-6, 618 P.2d 1230, 1231.  Schmidt and Dedios, however, do not explain how, and the Court's research did not show how,[19] Short, as a store manager, fits within this list of liable entities.  See Reply in Support of Motion to Remand at 9.  Indeed, Schmidt and Dedios admit that Short was not involved directly in selling the product, see Reply in Support of Motion to Remand at 9; they allege only that, as "[t]he store manager," Short was "responsible for all operations of the store including the merchandising and placement of products in the store."  Complaint ¶ 21, at 9.  A store manager's tenuous link -- "merchandising and plac[ing]" the product for display, Complaint ¶ 21, at 9 -- to the chain of distribution is not enough to extend strict products liability to store managers under

---

[19]See Analysis §§ I(B) & (C), infra.

New Mexico law, because "New Mexico cases have decisively rejected the contention that a defendant can be a supplier when it did not actually sell the defective item to someone," Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (citing Arenivas v. Continental Oil Co., 1983-NMCA-104, ¶ 15, 692 P.2d at 34; Livingston v. Begay, 1982-NMSC-121, 652 P.2d 734).  Here, there is no allegation that Short sold the allegedly defective product, see Reply in Support of Motion to Remand at 9, Complaint ¶¶ 27-35, at 11-12; and although, Short's employer, Walmart, is a supplier because it placed the toy into the stream of commerce and can therefore be held strictly liable for the sale of toy if it is found to be defective, Walmart's status as a supplier does not imply that Short is responsible for Walmart's status or actions, see Lobato v. Pay Less Drug Stores, Inc., 261 F.2d at 408-09 ("[M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation."); N.M.R.A., Civ. UJI 13-1402; Reply at 8 (admitting this conclusion of law).  For the Court to conclude that Schmidt and Dedios did not fraudulently join Short, there must be a possibility that Short, independent from Walmart, is a seller or supplier. See Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d at 1124-25.  Because a party that does not sell or otherwise place an allegedly defective product in the stream of commerce cannot be strictly liable for any alleged harm the product causes; the Court concludes that there is no possibility that Short can be liable for harm that the product causes under New Mexico's strict products liability law.  See Livingston v. Begay, 1982-NMSC-121, ¶ 29, 652 P.2d at 739.  Store managers are not "in the business of selling products," rather, such employees are employed by companies that are "in the business of selling products for use or consumption." Restatement (Second) of Torts § 402A.  See Stang v. Hertz Corp., 1972-NMSC-031, 83 N.M. 730, 497 P.2d 732 (adopting the Restatement (Second) of Torts § 402A).  See Am. L. Prod. Liab. 3d § 5:48 ("'[S]ellers' are the businesses, not the employees, who act solely as agents for their principal.").

Cf. Hensley v. Orscheln Farm & Home, LLC, No. 11-4159-CM-GLR, 2012 WL 628201, at *5 (D. Kan. Feb. 27, 2012)(Murguia, J.)(holding, under Kansas law, "that there is no reasonable possibility that plaintiff would be able to establish that [the store managers] are strictly liable for plaintiff's injuries" from a defective product)(emphasis in the original); McCurtis v. Dolgencorp, Inc., 968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997)(Lee, J.)(holding, under Mississippi law and the Restatement (Second) Section 402A, "that there exists no reasonable basis for predicting that [Mississippi] state law might impose strict liability upon the employees of businesses which sell products to consumers.").

**B.  STRICT PRODUCTS LIABILITY'S POLICY OF RISK- OR COST-DISTRIBUTION DOES NOT SUPPORT EXPANDING STRICT PRODUCTS LIABILITY TO INCLUDE SUPPLIERS AND SELLERS'S EMPLOYEES.**

Next, the Court concludes that the policy rational of strict products liability precludes extending liability to employees of suppliers or sellers.[20]  New Mexico has adopted the basis for products liability found in the Restatement (Second) of Torts § 402A (1965).  See Stang v. Hertz Corp., 1972-NMSC-031, 83 N.M. 730, 497 P.2d 732 (adopting the Restatement (Second) of Torts § 402A).  The policy underpinnings supporting imposition of strict liability on product manufacturers and suppliers include:

> [i] placing the cost of injuries caused by defective products on the manufacturer who is in a better position to pass the true product cost on to all distributors, retailers, and consumers of the product; [ii] relieving the injured plaintiff of the

---

[20]The Court recognizes that it should not engage in "multi-part policy analysis" when determining whether there is a possibly viable claim against a non-diverse defendant.  Spataro v. Depuy Orthopaedics, Inc., No. CIV 08-0274 JCH/LAM, 2009 WL 382617, at *8 (D.N.M. Jan. 9, 2009)(Martinez, J.).  Here, however, the Court concludes that policy of strict products liability demonstrates that there is no possibly viable claim against Short.  The Court engages in the policy analysis to demonstrate that it is straightforward to conclude the there are no policy grounds to extend strict products liability to Short.

onerous burden of establishing the manufacturer's negligence; [iii] providing full chain of supply protection; and, [iv] in the interest of fairness, providing relief against the manufacturer who -- while perhaps innocent of negligence -- cast the defective product into the stream of commerce and profited thereby.

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 22, 120 N.M. 372, 902 P.2d 54, 57-58.  See

Smith ex rel. Smith v. Bryco Arms, 2001-NMCA-090, ¶ 12, 131 N.M. 87, 33 P.3d 638, 644

(reiterating the same four principles).  The Supreme Court of New Mexico explained in more detail

that:

> The policy of risk- or cost-distribution continues to serve as a primary basis for imposing strict products liability. . . . "Strict liability in a sense is but an attempt to minimize the costs of accidents and to consider who should bear those costs."
>
> In addition to the cost-distribution rationale . . . other courts have approved specifically the rationale that imposing strict liability relieves plaintiffs of the burden of proving ordinary negligence under circumstances in which such negligence is likely to be present but difficult to prove. . . .
>
> The third policy cited for the imposition of strict liability is that suppliers who otherwise might not be liable because of a passive role in the chain of supply should be encouraged to select reputable and responsible manufacturers who generally design and construct safe products and who generally accept financial responsibility for injuries caused by their defective products.  . . .
>
> Fourth . . ., imposing strict products liability serves the interests of fairness. . . . The fairness rationale embodies a normative judgment that plaintiffs injured by an unreasonably dangerous product should be compensated for their injuries.  At the heart of this judgment lies the conclusion that although the manufacturer has provided a valuable service by supplying the public with a product that it wants or needs, it is more fair that the cost of an unreasonable risk of harm lie with the product and its possibly innocent manufacturer than it is to visit the entire loss upon the often unsuspecting consumer who has relied upon the expertise of the manufacturer when selecting the injury-producing product.

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 15-18, 902 P.2d at 57-58 (citations omitted).[21]

---

[21]The Supreme Court of New Mexico also noted:

> Arguably, there is a fifth policy objective underlying the imposition of strict products liability.  As stated by this Court in Rudisaile v. Hawk Aviation, Inc., 1979

Further, "[t]he rationales behind application of strict liability do not apply when the injured party necessarily has a direct relationship with the defendant, when proof of negligence is not difficult, and when traditional remedies have proven adequate." Livingston v. Begay, 1982-NMSC-121, ¶ 28, 652 P.2d 734, 738 ("hold[ing] that a hotel operator may not be held strictly liable for injuries suffered by hotel guests when the injuries are caused by defects inherent in the fixtures or furnishings of the hotel rooms").

The Court concludes that, under all four goals of strict products liability, there is no possible reason to hold employees of sellers and suppliers strictly liable. First, a store manager, as an employee of a supplier or seller, is no "position to pass the true product cost on to all distributors, retailers, and consumers of the product." Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 22, 902 P.2d at 59. Schmidt and Dedios allege that the

> store manager at the Walmart is responsible for all operations of the store including the merchandising and placement of products in the store. The store manager is responsible and has duty to understand the types of merchandise being sold in the store and the manner in which such merchandise is placed, advertised, and displayed.

Complaint ¶ 21, at 9. Schmidt and Dedios advance no allegations that a store manager can control the price or otherwise control the risk- and cost-distribution associated with the allegedly defective

---

-NMSC- 015, ¶ 7, 592 P.2d 175, 176 (1979), imposing strict products liability may cause manufacturers to take more care in designing and manufacturing a product and in the warnings they give to consumers about using that product. Some courts have posited that strict liability encourages manufacturers to increase spending on research and development, thereby promoting the development of safer products. See, e.g., Beshada v. Johns–Manville Prods. Corp., 447 A.2d 539, 548 (1982)("By imposing on manufacturers the costs of failure to discover hazards, we create an incentive for them to invest more actively in safety research."). We, however, do not base our decision today on whether imposing strict liability for defective design increases manufacturer care in this manner.

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶18 n. 1, 902 P.2d at 58 n.1.

toy, which is the "primary basis for imposing strict products liability." Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 15, 902 P.2d at 57.  Even if, contrary to Short's declaration, a store manager is able to control the placement of products in the store, such minimal control does not allow a store manager to pass on the cost of a product that includes the risk of a defect on to consumers, and not distributors or retailors involved in the product marketing and sale. See Decl. Short ¶ 3, 6, 7, at 1 (stating that Short had "no role" in the decision to sell the allegedly defective toy, "no role in . . . plac[ing] the . . . toy," and "no involvement in any marketing" of the toy); Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85 (stating that district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available")(citations omitted).

Second, establishing proof of Short's negligence is not difficult, making strict products liability unnecessary. See Livingston v. Begay, 1982-NMSC-121, ¶ 28, 652 P.2d at 738 ("The rationales behind application of strict liability do not apply when . . . proof of negligence is not difficult . . . .").  Schmidt and Dedios allege that Short is liable, because (i) "it was wholly within [Short's] control as store manager to safely implement th[e] decision[] [where to place the product] and to address hazards created by those decisions"; and (ii) she had a duty to inspect the toy for defects.  Complaint ¶¶ 20-21, 37-44, at 9, 13-15. See Motion to Remand at 8.  Establishing Short's duty as a store manager -- i.e. determining a store manger's role in placing, marketing, merchandising, and inspecting products -- and establishing whether Short was negligent in the performance of that duty is not "onerous" or "difficult to prove" compared to establishing negligence associated with the manufacturing and design process that can require determining "'the feasibility and cost of alternative designs . . . [which] involve technical matters peculiarly within the knowledge of the manufacturer.'" Brooks v. Beech Aircraft Corp., 1995-NMSC-043,

- 75 -

¶ 15, 16, 22, 902 P.2d at, 58, 59 (quoting Barker v. Lull Eng'g Co., 573 P.2d 443, 455 (1978)).

Under the second policy rationale there is, therefore, no suggestion that strict product liability

should extend a supplier or seller's employee.

Third, Schmidt and Dedios do not contend that a store manager, such as Short, is in an

"economic bargaining position" to "select reputable and responsible manufacturers who generally

design and construct safe products and who generally accept financial responsibility for injuries

caused by their defective product."  Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 17, 902

P.2d at 58 (citing cases noting that retailers are in position to exert pressure on manufacturers and

thereby ensure product safety).  Here, there is no contention or suggestion that a local store

manager selects what manufacturers a nationwide company like Walmart chooses to do business

with.  See generally Complaint ¶¶ 1-63, at 1-19.  In addition, the Supreme Court of New Mexico

notes that extending strict liability to suppliers makes sense, because "the injured consumer is . . .

provided with an alternative remedy in the event that the manufacturer is insolvent, out of business,

or so remote that it is either impossible to obtain jurisdiction or unduly burdensome to bring suit."

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 17, 902 P.2d at 58.  Here, Schmidt and Dedios

are suing the store manager in addition to Epoch Everlasting and Walmart as the designers,

manufactures, suppliers and retailers of the allegedly defective toy, so there is no concern that

Schmidt and Dedios lack an alternative remedy if one of the defendants proves to be insolvent or

out of business.  See Complaint at ¶¶ 1-4, at 1-3.  Moreover, Epoch Everlasting and Walmart, as

companies, are likely preferable targets for liability than an employee, and if Schmidt and Dedios

can sue a supplier or seller's employee, it is unlikely that the employer is "so remote it is either

impossible to obtain jurisdiction or unduly burdensome to bring suit."  Brooks v. Beech Aircraft

Corp., 1995-NMSC-043, ¶ 17, 902 P.2d at 58.

Fourth, there is no fairness argument to extend liability to a store manager, because the parties do not contend that Short has "cast the defective product into the stream of commerce and profited thereby." Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 22, 902 P.2d at 59. Although a store manager may profit indirectly from the sale of various products -- because continued employment depends on the employer's continued success -- there is no indication here that Short profited directly from the sale, as a sales representative might profit directly by receiving a commission, or otherwise "play[ed] an integral role in the marketing enterprise of an allegedly defective product and participate[d] in the profits derived from placing the product into the stream of commerce." Baeza v. Tibbetts, 2006 WL 2863486, at *4-5 (noting that courts have held sales representatives strictly liable, even if they never had possession of the product, but earned commissions on its sale, because they had a "participatory connection" to the sale).

In sum, none of the four policy factors suggest any possibility that the Supreme Court of New Mexico would extend strict products liability to a store manager. Instead, all four factors counsel against it.

### C.   NO OTHER JURISDICTIONS EXTEND STRICT PRODUCTS LIABILITY TO STORE MANAGERS.

Turning to whether other jurisdictions have extended strict products liability to employees, the Court could find no law to support Schmidt's and Dedios' argument that a store manager can be held strictly liable. Generally, liability for injuries caused by a defective product is not imposed on a party that does not manufacture or sell the product,[22] and the Court finds no law to suggest

---

[22]In addition to New Mexico, thirty-four states, as well as the District of Columbia, Puerto Rico, and the Virgin Islands have adopted the Restatement (Second) Torts or a close variation of it. See Adoption of Restatement Second Version of Strict Liability -- List of States Adopting Restatement, Am. L. Prod. Liab. 3d § 16:9 (listing states). E.g., McCurtis v. Dolgencorp, Inc., 968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997)(Lee, J.)(concluding under the Restatement (Second) of

that such liability extends to store managers.  See Thompson v. Whole Space Indus. Co., Ltd., No. 4:10-CV-00025 GTE, 2010 WL 11643618, at *2 (E.D. Ark. Mar. 10, 2010)(Eisele, J.)("There appears to be no reasonable basis in law or fact for the asserted products liability claim against [the non-diverse defendant] for [strict products liability and] negligence in the performance of his managerial duties while employed by Target, the supplier of the allegedly defective product."); McCurtis v. Dolgencorp, Inc., 968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997)(Lee, J.)(concluding under the Restatement (Second) of Torts and Mississippi law, that "[i]t is . . . manifest to the court that there exists no reasonable basis for predicting that [Mississippi] state law might impose strict liability upon the employees of businesses which sell products to consumers"); Hensley v. Orscheln Farm & Home, LLC, No. 11-4159-CM-GLR, 2012 WL 628201, at *5 (D. Kan. Feb. 27, 2012)(Murguia, J.)(concluding, under Kansas law, "that there is no reasonable possibility that plaintiff would be able to establish that [the store managers] are strictly liable for plaintiff's injuries" from a defective product under Kansas law)(emphasis in the original); Am. L. Prod. Liab. 3d § 5:48 ("'[S]ellers' are the businesses, not the employees, who act solely as agents for their principal.").  See also Musser v. Vilsmeier Auction Co., Inc., 522 Pa. 367, 375-76, 562 A.2d 279,

---

Torts and Mississippi law, that "[i]t is . . . manifest to the court that there exists no reasonable basis for predicting that [Mississippi] state law might impose strict liability upon the employees of businesses which sell products to consumers"); Magnus v. Fortune Brands, Inc., 41 F. Supp. 2d 217, 225 (E.D. N.Y. 1999)(Gershon, J.)(under both Maine and New Jersey law, tobacco industry-related trade and research associations could not be liable, under theories of failure to warn, negligent and defective design, or strict products liability, for harm suffered by cigarette smokers, where the associations had never manufactured, distributed, or sold cigarettes)(citing Stanley v. Schiavi Mobile Homes, Inc., 462 A.2d 1144, 1147 (Me. 1983); Zaza v. Marquess and Nell, Inc., 144 N.J. 34, 675 A.2d 620, 627 (1996)); Antone v. Greater Ariz. Auto Auction, Inc., 14 Ariz. 550, 552, 155 P.3d 1074, 1076 (Ct. App. 2007)(holding that under Arizona law, in order for a non-manufacturer to be liable in product liability in Arizona, the entity must be a "seller"); Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207, 1219 (N.D. Ala. 2006)(Hopkins, J.)(citing Ala. Code §§ 7-2-313(1), 7-2-314(1), 7-2-315(1)).

283 (1989)(holding that, under Pennsylvania law and under the Restatement (Second) of Torts §
402A, auctioneers are not "sellers" subject to strict liability, because an auctioneer has no
ownership of or control over the items auctioned, and acts only "an agent, an ad hoc salesman of
the goods of another for a specific purpose and a specific time[;] . . . [h]e bears no relation to the
manufacturer or the goods, beyond their immediate sale," and liability "would be of minimal effect
in advancing the purposes"); Antone v. Greater Ariz. Auto Auction, 214 Ariz. 550, 552, 155 P.3d
1074, 1076 (Ct. App. 2007)(holding that, under Arizona law and the Restatement (Second) of
Torts, a commercial auctioneer is not liable under a theory of strict products liability because a
commercial auctioneer is not a seller, even under Arizona's expansive definition of seller);
Smalley v. The Procter & Gamble Co., No. 06-C-0295-C, 2006 WL 5908354, at *1 (W.D. Wis.
July 17, 2006)(Crabb, J.)(citing the Restatement (Second) of Torts § 402A and stating that the
"appropriate defendant in [a failure to warn] . . . claim is the manufacturer of the product, not the
manufacturer's employees (particularly not employees . . . who had no apparent involvement with
[manufacturer's] decision not to warn consumers.").  The Court finds the comparison of store
managers to auctioneers persuasive for purposes of strict products liability, because store managers
also do not have ownership of, or control over, the items sold by the employer, and at most act as
"an agent" for the employer supplier.  Musser v. Vilsmeier Auction Co., Inc., 522 Pa. at 375-76,
562 A.2d at 283.

Several jurisdictions have come to the same conclusion as the Court that store managers
are not strictly liable for defective products.  For example, the Honorable Tom S. Lee, United
States District Judge for the District of Mississippi, concluded that the plaintiffs fraudulently
joined a store manager under a theory of strict products liability.  See McCurtis v. Dolgencorp,
Inc., 968 F. Supp. at 1160-61.  Although, Judge Lee analyzed the claim under Mississippi law,

Judge Lee anchored his analysis on the Restatement (Second) Section 402A, which is the basis for strict products liability in New Mexico:[23]

> [The term seller] is further defined by Restatement (Second) Section 402A as "any person engaged in the business of selling products for use or consumption." . . . It is . . . manifest to the court that there exists no reasonable basis for predicting that [Mississippi] state law might impose strict liability upon the employees of businesses which sell products to consumers.  Such employees are not "in the business of selling products" but rather are employed by companies that are "in the business of selling products for use or consumption."  Thus, in that circumstance, the "sellers" are the businesses, and not their employees, who act solely as agents for their principals.  Therefore, there is no possibility that plaintiff has alleged any viable claim for recovery against [the store manager].

McCurtis v. Dolgencorp, Inc., 968 F. Supp. at 1160-61.  Similarly, the Honorable Carlos Murguia, United States District Judge for the District of Kansas, held "that there is no reasonable possibility that plaintiff would be able to establish that [the store managers] are strictly liable for plaintiff's injuries" from a defective product under Kansas law, because "[t]he court can find no case in which a plaintiff has been permitted to proceed on a theory of strict liability against an individual employee of a retailer or manufacturer.  Nor would such an action serve the purposes for which strict liability is imposed."  Hensley v. Orscheln Farm & Home, LLC, No. 11-4159-CM-GLR, 2012 WL 628201, at *5 (emphasis in the original).  See also Thompson v. Whole Space Indus. Co., Ltd., No. 4:10-CV-00025 GTE, 2010 WL 11643618, at *2 (same under Arkansas law."); Chism v. CNH Am., LLC, 2008 WL 495878, at *3 (E.D. Ark. Feb. 20, 2008)(Holmes, J.)(concluding there was fraudulent joinder, and stating that "[alt]hough [the non-diverse defendant] was the employee . . . who handled the sale, that does not make him the seller . . . or supplier" under Arkansas law).

---

[23]See Stang v. Hertz Corp., 1972-NMSC-031, ¶¶ 18-19, 497 P.2d 732, 736 abrogated on other grounds by Livingston v. Begay, 1982-NMSC-121, 652 P.2d 734.

Courts, however, have come to differing conclusion whether to extend strict products liability to sales representatives depending on whether the court views a sales representative as merely an employee and not a seller, and thus declining to extend liability, or as an entity serving an integral role in the sale, thus extending liability.  For instance, the Honorable Ann J. Brown, United States District Judge for the District of Oregon, concluded that a sales representative is not liable, under Oregon law, which adheres to the Restatement (Second) of Torts § 402A:

> [T]he Court finds [the non-diverse defendant] is merely an employee of Novartis, the seller of the product and, therefore, is not strictly liable for the drugs that he promotes to physicians pursuant to [Oregon law].  Although [the employee] received some benefit from sales of the drugs that he promoted in the form of bonuses and job security, those benefits were not sufficient to confer on [the employee] any ownership in or control over those products.

DaCosta v. Novartis AG, No. CV 01-800-BR, 2002 WL 31957424, at *8 (D. Or. Mar. 1, 2002)(Brown, J.).   Accord Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207, 1217 (N.D. Ala. 2006)(Hopkins, J.)(concluding that, under the Alabama Extended Manufacturer's Liability Doctrine,[24] sales representatives for a pharmaceutical drug manufacturer are not "sellers" exposed to possible liability, because the sales representatives are the seller's only agents where they had no "meaningful control over the distribution of [the drug]" and "could not have prevented, in any substantial way, the dispersion of [the drug] to consumers"); In re Rezulin Prod. Liab. Litig., 133 F. Supp. 2d 272, 287–88 (S.D.N.Y. 2001)(Kaplan, J.)(concluding in a Multidistrict Litigation action that, under Alabama law, a sales representative was fraudulently joined, because the "sales representative . . . neither manufactured, sold nor supplied [the drug;  r]ather, he was an agent of

---

[24]The Alabama Extended Manufacturer's Liability Doctrine establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, [thereby] constitut[ing] negligence as a matter of law."  Casrell v. Altec Industries, Inc., 335 So.2d 128, 132 (Ala. 1976).

the manufacturer and seller[;] [a]s a corporate employee, he was not 'the one best able' to prevent sales of defective drugs."); In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 2004 WL 1535806, at *2 (E.D. Pa. June 18, 2004)(Bartle, J.)(holding, under Mississippi law, that sales representatives "are not 'sellers,' but rather employees of the businesses which are the sellers. . . .  There is 'no reasonable basis . . . supporting the claim against' the sales representative defendants" under either strict products liability or negligence, and concluding "they are fraudulently joined.")(citations omitted); Faison v. Wyeth, Inc., 353 F. Supp. 2d 1273, 1279 (S.D. Ga. 2004)(Hood, J.)(holding that defendant sales representative who did not market the drug at issue in the case had been fraudulently joined); Anderson v. Merck & Co., 417 F. Supp. 2d 842, 846 (E.D. Ky. 2006)(Hood, J.)(same); Memphis Bank & Tr. Co. v. Water Servs., Inc., 758 S.W.2d 525, 529, Prod. Liab. Rep. (CCH) P 11,924 (Tenn. 1988)(holding that a sales representative is not a seller or manufacturer, and therefore not strictly liable, because the sales representative was not an entity engaged in the business of selling a product, the sales were made on employer's behalf for which the representative was paid a commission, and the sales representative was neither a stockholder, director, nor officer of the corporate defendant).  See also Am. L. Prod. Liab. 3d § 5:26 ("Sales representatives for a manufacturer are not 'sellers' but, rather, are agents of the seller, where they have no meaningful control over distribution of the product and could not have prevented, in any substantial way, its dispersion to consumers."). In contrast, other courts, including the Honorable James A. Parker, Chief United States District Judge for the District of New Mexico, have extended strict products liability to sales representatives where the sales representatives "play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce."  Baeza v. Tibbetts, 2006 WL 2863486, at *5 (concluding that the plaintiff's had a

viable claim, thus defeating fraudulent joinder, where the sales representative's "affidavit does not deny that he sold, promoted, marketed, or distributed the cardiac device in New Mexico. The fact that he may not have directly marketed to Plaintiffs or Plaintiffs' healthcare providers does not necessarily insulate [the sales representative] from strict liability.").[25]   See St. Martin v. Wyeth, Inc., No. CIV. 03-0637 JP/WDS, 2003 WL 26127739, *3-4 (D.N.M. Aug. 14, 2003)(Parker, C.J.)(explaining that, under New Mexico law, that the plaintiffs had potentially stated viable claims against a sales representative for purposes of fraudulent joinder where the sales representative did not deny selling, promoting, marketing, or distributing an allegedly defective drug in New Mexico even if the sales representative did not directly market the drug to plaintiffs' health care providers);[26] Durove v. Fabian Transport, Inc., No. 04 CIV. 7000 (RJH), 2004 WL 2912891, at *5-6 (S.D.N.Y 2004)(Holwell, J.)(concluding that there was no fraudulent joinder where the non-diverse defendant sold products to the plaintiff on behalf of the seller-manufacturer); Oliva v. Bristol-Myers Squibb Co., No. CIVA305CV00486 (JCH), 2005 WL 3455121, at *5-7 (D. Conn. 2005)(Hall, J.)(same); Hughes v. I-Flow Corp., No. 1:08-CV-707-SEB-TAB, 2009 WL 10689808, at *4 (S.D. Ind. Feb. 26, 2009)(Barker, J.)(same).   Although there is a possible claim of strict product liability against a sales representative, a sales representative who profits directly from a sale of a specific product through a commission is distinguishable from Short, a store manager who is in charge of a store inventory containing many different products, and who is not alleged

---

[25]Here, in contrast, Short's declaration denies selling, manufacturing, designing, labelling, distributing, placing, or marketing the allegedly defective toy.  See Decl. Short ¶¶ 3-7, at 1.

[26]Again, here, in contrast, Short's declaration denies selling, manufacturing, designing, labelling, distributing, placing, or marketing the allegedly defective toy.  See Decl. Short ¶¶ 3-7, at 1.

to play an integral role in selling, promoting, marketing, or distributing the specific product at issue, other than having general control over store inventory.  See Complaint ¶¶ 7, 13-25, at 2-13. See also Decl. Short ¶¶ 1-11, at 1.  While the Court agrees with then-Chief Judge Parker that the Supreme Court of New Mexico would hold a sales representative liable under strict products liability, the Court predicts that the Supreme Court of New Mexico would not extend strict products liability for most store products to a store manager of a Walmart, where no court or jurist has gone that far, and no commanding authority suggests that the Court should go there.  The Court concludes, therefore, that there is no possible viable basis for believing that the Supreme Court of New Mexico would hold that an individual employee of an entity, which is a seller or supplier, liable for strict products liability.

## II.   SCHMIDT AND DEDIOS DO NOT ALLEGE A "POSSIBLY VIABLE" CLAIM AGAINST SHORT UNDER A THEORY OF NEGLIGENCE, BECAUSE THE INJURY OCCURRED AT HOME AND SHORT DID NOT HAVE A DUTY TO INSPECT IN HER ROLE AS A STORE MANAGER.

After resolving all disputed questions of fact and all ambiguities in the controlling law in favor of Schmidt and Dedios, the Court concludes that Schmidt and Dedios have not stated a "possibly viable" claim against Short under a theory of negligence.  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  Schmidt and Dedios allege that Short, as a store manager, was negligent, because (i) she had a duty to use ordinary care in her role as store manager to avoid a foreseeable risk of injury to customers, because "it was wholly within [Short's] control as store manager to safely implement th[e] decision[] [where to place the product] and to address hazards created by those decisions"; and (ii) she had a duty to inspect the toy for defects.  See Complaint ¶¶ 20-21, 37-44, at 9, 13-15; Motion to Remand at 8.  Schmidt and Dedios contend that Short was negligent separate from their claim of strict products liability, because Short "was

responsible for managing the merchandising, placement, and display of products in the store, as well as monitoring the impacts of those decisions and reporting any concerns to her employer." Reply in Support of Motion to Remand at 15.  Although, Schmidt and Dedios do not cite a case establishing an employee's duty under either theory of negligence, the lack of on point legal authority does not end the inquiry, because there must be no possible claim against Short for the Defendants to prevail under fraudulent joinder analysis.  Cf. Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  The Court concludes, however, that the under New Mexico law, there is no possible negligence claim against a store manager for allowing a defective product to be sold or for failing to inspect the store's inventory for a defective product, because (i) the injury occurred at home, not at the store, meaning premises liability is not implicated; and (ii) even if a store manager can be considered a seller or supplier for products liability purposes, Short does not have a duty to inspect products for defects, because Schmidt and Dedios do not allege that Short had a reason to know or knowledge of a specific defect.

As a threshold matter, "[a] finding of negligence . . . is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729.  New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  The Supreme Court of New Mexico states that, generally,

> New Mexico law recognizes that there exists a duty assigned to all individuals requiring them to act reasonably under the circumstances according to the standard of conduct imposed upon them by the circumstances.  The determination of duty in

> any given situation involves an analysis of the relationship of the parties, the
> plaintiff's injured interests and the defendant's conduct; it is essentially a policy
> decision based on these factors that the plaintiff's interests are entitled to protection.

Calkins v. Cox Estates, 1990-NMSC-044, ¶ 11, 792 P.2d 36, 40 (citations omitted).  To determine

whether the defendant's obligation is one to which the law will give recognition and effect, New

Mexico courts consider legal precedent, statutes, and other principles of law.  See Herrera v.

Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

Under New Mexico law, the "tort liability of an employee or an agent for an omission is

determined by the law of negligence."  Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 23, 824

P.2d 293, 300.  Employees can be held personally liable where they "directed, controlled, approved

or ratified the activity that led to the injury,"  Stinson v. Berry, 1997-NMCA-076, ¶ 17, 943 P.2d

129, 133; see Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 23, 824 P.2d at 300-301 (citing

Restatement (Second) of Agency § 355 (1957)),[27] and "the liability of an employee or agent for

injuries caused by dangerous conditions on occupied premises is directly related to actual control

over the premises,"  Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 23, 824 P.2d at 300-301

(citing Restatement (Second) of Agency § 355 comment b (1957)("If an agent has only a limited

control over land or chattels, he is subject to liability only to the extent that he is authorized to

---

[27]New Mexico courts also look to the Restatement (Second) of Agency, which provides:

> An agent who has the custody of land or chattels and who should realize
> that there is an undue risk that their condition will cause harm to the person, land,
> or chattels of others is subject to liability for such harm caused during the
> continuance of his custody, by his failure to use care to take such reasonable
> precautions as he is authorized to take.

Restatement (Second) of Agency § 355 (1957).  See Klopp v. Wackenhut Corp., 1992-NMSC-
008, ¶ 23, 824 P.2d at 300-301 (citing Restatement (Second) of Agency § 355).

exercise such control."); Restatement (Second) of Torts § 387 (1964)(liability of independent contractor or servant taking over entire charge of land)).

Store managers do have a general duty of ordinary care, which includes the duty to exercise reasonable care to keep store premises safe. See Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 17, 824 P.2d 293, 299 (stating that "with respect to an obviously dangerous condition of which the occupier of the premises has knowledge, or has reason to know, the occupier has a duty to use ordinary care to keep the premises safe"). This is commonly known as premises liability, and the duty includes safeguarding visitors from dangerous conditions of which the owner or occupier of the premises could reasonably anticipate would harm visitors. See Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 17, 824 P.2d at 299; Calkins v. Cox Estates, 1990-NMSC-044, ¶ 13, 792 P.2d 36, 40 (stating that a landlord has a duty to maintain common areas in a reasonably safe condition for the use of the tenants and recognizing a duty to repair if a reasonably prudent person would anticipate a risk to safety); Monett v. Dona Ana Cnty. Sheriff's Posse, 992-NMCA-096, ¶ 18, 840 P.2d 599, 605 (stating that an "owner or occupier of property has a duty to maintain the property in a safe condition," and a duty to safeguard business visitors to whom harm is reasonably foreseeable by an avoidable, dangerous condition); N.M.R.A., Civ. UJI 13-1309 ("An [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor [, whether or not a dangerous condition is obvious].")(brackets in the original). The extent of premises liability depends on the degree of control exercised by the store manager over the premises. See Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 23, 824 P.2d at 300-301 (citing Restatement (Second) of Agency § 355 comment b (1957)).

"Market[ing]," "merchandis[ing]" and "sell[ing]" an allegedly defective product does not, however, fall under the ambit of maintaining a safe store premises, unless the defective product

somehow caused the injury at the store, which Schmidt and Dedios do not allege.  Complaint ¶ 20, 24, at 9, 10   If Schmidt and Dedios alleged that the placement of the toy at the store caused D.D. to trip and fall, or otherwise caused an injury at the store, they would have a possible claim against Short as the store manager.  See, e.g., Austin v. Wal-Mart Stores, Inc., 2006 WL 8443828, at *2-3 (D.N.M. Aug. 10, 2006)(Brack, J.)(concluding, under New Mexico law, that a store manager had not been fraudulently joined in a slip-and-fall case); Brooks v. K-Mart Corp., 1998-NMSC-028, ¶ 8, 964 P.2d 98, 100 (discussing a slip-and-fall case);  Klopp v. Wackenhut Corp., 1992-NMSC-008, ¶ 12, 824 P.2d at, 297 (holding that occupier of premises is liable even for open and obvious dangers); N.M.R.A., Civ. UJI 13-1318 (slip-and-fall).  Rather, Schmidt and Dedios allege that the injury occurred at home.  See Complaint ¶ 24, at 10.  The Court concludes, therefore, that there is no possible claim of negligence under New Mexico's premises liability against Short, regardless whether Short, as the store manager, had control over the placement, marketing, merchandising, and sale of the allegedly defective product.

Schmidt and Dedios also allege that Short had a duty to inspect Walmart's inventory for defective products.  See Complaint ¶¶ 20-21, 37-44, at 9, 13-15.[28]  No New Mexico court has

---

[28]The Complaint alleges various standards of care, which are alternatives of an ordinary duty of care and a duty to inspect under a theory of negligence:

Marie Short, as manager of the store, [has] the duty and responsibility to carry out the operation of the business in a safe and prudent manner.  This includes the duty to market, merchandise, and sell products in such a manner that it will not present a danger to its customer.

. . .

The store manager at the Walmart is responsible for all operations of the store including the merchandising and placement of products in the store.  The store manager is responsible and has duty to understand the types of merchandise being sold in the store and the manner in which such merchandise is placed, advertised,

and displayed.

. . .

MARIE SHORT, as the designer[], manufacturer[], supplier[] and distributor[] and retailer[] of the toy in question, had a duty to use ordinary care in designing, manufacturing, testing, marketing, packaging, merchandising and selling the toy in question.

. . .

MARIE SHORT, had a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the toy in question or the manner in which they were used.

. . .

MARIE SHORT's duty to use ordinary care to avoid a foreseeable risk of injury continued after the toy in question left their possession, if they knew, or in the exercise of ordinary care should have known, of a foreseeable risk of injury caused by a condition of the toy in question or the manner in which they could be used.

. . .

MARIE SHORT, had a duty to use ordinary care to warn of a risk of injury about which they knew or should have known.

. . .

MARIE SHORT, had a duty to use ordinary care to provide directions or instructions for use of the toy in question to avoid a risk of injury caused by a foreseeable manner of use.

. . .

MARIE SHORT, had a duty to use ordinary care to inspect the toy in question for conditions which could expose users to risk of injury.

. . .

MARIE SHORT, had a duty to inspect the toy in question before selling them for conditions which could expose users to risk of injury when they had knowledge which would lead a reasonably prudent person to undertake an

addressed whether an employee has the duty to inspect products for defects.  Because New Mexico

has not directly addressed this issue, this Court must make a determination, under Erie, 304 U.S.

at 64, how the Supreme Court of New Mexico would rule.  See Pehle v. Farm Bureau Life Ins.

Co., 397 F.3d 897, 901 (10th Cir. 2005); UPS v. Weben Indus., 794 F.2d 1005, 1008 (5th Cir.

1986)(stating that, "when making an Erie-guess in the absence of explicit guidance from the state

courts, we must attempt to predict state law, not to create or modify it.").  The Court may consider

all resources available, including decisions of New Mexico courts and the general trend of

authority.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001).

Although, the Supreme Court of New Mexico has not addressed whether an employee has

the duty to inspect products for defects, it has stated  that "'[a] supplier who did not make a product

. . . is ordinarily under no obligation to inspect it for conditions which expose users [bystanders]

to risk of injury.'"  Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 27, 902 P.2d at 60 (quoting

N.M.R.A., Civ. UJI 13-1414)(second alteration in N.M.R.A., Civ. UJI 13-1414).  The N.M.R.A.,

Civ. UJI 13-1414 provides in full:

> A supplier who did not make a product and has not permitted it to be sold
> as the supplier's own is ordinarily under no obligation to inspect it for conditions
> which expose users [bystanders] to risk of injury. However, a supplier who has
> knowledge which would lead a reasonably prudent person to undertake an
> inspection of the product before selling it is charged with knowledge of that which
> a reasonable inspection would disclose.
>
> DIRECTIONS FOR USE
>
> This instruction is to be given where a nonmanufacturer is the defendant
> (retailer, wholesaler), and the defendant's failure to discover and warn against a
> defect in the product after information has come to light sufficient to alert the

---

inspection.

Complaint ¶¶ 20-21, 37-44, at 9, 13-15.

reasonably prudent person is a submissible issue. This instruction is not to be given if the defendant is the manufacturer or lessor of the product.

N.M.R.A., Civ. UJI 13-1414.  The commentary adds:

> There is a clear distinction between the liability of a manufacturer and that of a seller of goods made by another.  Restatement (Second) of Torts §§ 401 and 402 (1965).  Absent some knowledge or reason to know that a product presents an unreasonable risk of injury, the law imposes no obligation on the seller to inspect for hidden defects.  Restatement (Second) of Torts § 402, comment d.

N.M.R.A., Civ. UJI 13-1414 cmt.   Although Brooks v. Beech Aircraft Corp.'s reliance on

NM UJI 13-1414 was limited to a policy discussion whether the Supreme Court of New Mexico

should extend strict product liability for a design-defect to a supplier, see 1995-NMSC-043, ¶ 27,

902 P.2d at 60,[29] the Court is confident that the Supreme Court of New Mexico will continue to

follow the standard set forth in NM UJI 13-1414, because it is premised on the Restatement

(Second) of Torts, to which the New Mexico courts often look, see Schmitz v. Smentowski, 1990-

NMSC- 002, ¶ 49, 785 P.2d at 736 ("We have . . . been very willing to adopt the view of the

Restatement of Torts to assist our development of new tort areas."); Montanez v. Cass, 1975-

NMCA-142, ¶ 46, 546 P.2d 1189, 1195 ("It has long been the policy of our courts to follow in the

---

[29]Brooks v. Beech Aircraft Corp. explains that strict liability should encompass a supplier:

> With regard to the third policy rationale -- providing full chain of supply protection -- we see nothing about design defects that would diminish the effect that strict products liability has on product safety.  Suppliers should be encouraged to exercise great care in selecting the manufacturers whose products they choose to distribute and to pressure manufacturers to accept financial responsibility for injuries caused by their products. Such a result cannot be achieved through negligence law.  "A supplier who did not make a product . . . is ordinarily under no obligation to inspect it for conditions which expose users [bystanders] to risk of injury." [N.M.R.A., Civ. UJI 13-1414] (uniform jury instruction -- no duty to inspect).  . . . Thus the goal of providing greater consumer protection is served by imposing strict products liability [on the supplier for a design defect].

1995-NMSC-043, ¶¶ 26-27, 902 P.2d at 60-61.

footsteps of the Restatement of Torts, 2d."), reversed on other grounds by New Mexico Elec. Serv.

Co. v. Montanez, 1976-NMSC-028, 282, 551 P.2d 634.

> The Restatement (Second) of Torts § 402 provides:
>
> > A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.

Restatement (Second) of Torts § 402.  In addition, although no New Mexico court explicitly has

adopted § 402 of Restatement (Second) of Torts, the Supreme Court of New Mexico has adopted

§ 402A, see Stang v. Hertz Corp., 1972-NMSC-031, ¶ 20, 497 P.2d at 736, and § 402 comment a

provides that "[s]ection [402] should be read together with . . . § 402A, as to the special strict

liability of sellers of products for consumption,"  Restatement (Second) of Torts § 402 cmt. a.

Further, the commentary to the NM UJI for a supplier's duty to inspect explicitly references

Restatement (Second) of Torts § 402.  See N.M.R.A., Civ. UJI 13-1414 cmt ("Absent some

knowledge or reason to know that a product presents an unreasonable risk of injury, the law

imposes no obligation on the seller to inspect for hidden defects.  Restatement (Second) of Torts

§ 402, comment d.").  The Court concludes that, because New Mexico courts have been "very

willing to adopt the view of the Restatement of Torts to assist [its] development of new tort areas,"

Schmitz v. Smentowski, 1990-NMSC- 002, ¶ 49, 785 P.2d at 736, and because Brooks v. Beech

Aircraft Corp., 1995-NMSC-043, ¶ 27, 902 P.2d at 60, articulates the same principle, the Supreme

Court of New Mexico would adopt the finding of the Restatement (Second) of Torts § 402 and

hold that a supplier has no duty to inspect products for defects, where the supplier has no reason

to know or no knowledge that would lead a reasonably prudent person conduct an inspection.

> If, as Schmidt and Dedios contend, Short, as a store manager, is a supplier or seller, see

Complaint ¶ 28, at 11,[30] Short has no duty to inspect products for defects, unless she "has knowledge which would lead a reasonably prudent person to undertake an inspection of the product before selling it," N.M.R.A., Civ. UJI 13-1414.  The NM UJI explain that the a defendant is only liable for a "failure to discover and warn against a defect in the product" if "information has come to light sufficient to alert the reasonably prudent person is a submissible issue." N.M.R.A., Civ. UJI 13-1414.  Similarly, under the Restatement (Second) of Torts § 402, a seller does not have a duty to inspect, where the seller "neither knows nor has reason to know that [the product] is, or is likely to be, dangerous."   "Reason to know" is defined by the Restatement (Second) of Torts, as "the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12.  Other than alleging, that "in the exercise of ordinary care [Short] should have known, of a foreseeable risk of injury caused by a condition of the toy in

---

[30]As discussed in § I of the Court's Analysis, supra, the Court concludes that Short is not a supplier or seller for purposes of strict products liability.  For the sake of thoroughness, however, the Court will examine this line of reasoning.  In addition, there is an issue whether an employee like Short, as neither a supplier nor seller, has a duty to inspect for defective products, where her employer expressly does not have the duty to inspect absent knowledge.  Schmidt and Dedios do not point to any law establishing such a separate duty, nor could the Court find any law to suggest that New Mexico would impose such a duty.  Rather, "[a] corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation." Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 11, 872 P.2d 852, 855 (citing N.M.R.A., CIV UJI 13-409 ("A corporation can act only through its officers and employees.  Any act or omission of an officer or an employee of a corporation, within the scope or course of [his] [her] employment, is the act or omission of the corporation.")).  Therefore, if Short has an duty to inspect, it would be imposed on her employer; however, as discussed, her employer does not have a duty to inspect, unless there is reason to know or knowledge of the defect.  See N.M.R.A., Civ. UJI 13-1414.  Therefore, the Court concludes Short, as an employee, does not have an independent duty to inspect.

question or the manner in which they could be used," Complaint ¶ 39, at 13, Schmidt and Dedios

make no allegations that Short had the knowledge that would have led her to inspect the product.[31]

For this reason, Short's duty as a store manager is distinguishable from situations where there was

a possibility that a store manager could be found negligent for selling a product known to be

defective, for instance because of product recall.  See, e.g., Sakura v. Simplicity, Inc., No. 10-CV-

1229 WPJ/KBM, 2011 WL 1935617, at *2 (D.N.M. Apr. 7, 2011)(Johnson, J.)(concluding that,

under New Mexico law, the plaintiffs had not fraudulently joined a non-diverse store manager

where that the complaint alleged that store manager "[was] aware of the dangers associated with

the drop-side design and defect [of a crib], yet all the Defendants continued to promote, market

and distribute these dangerous cribs"); Mitchell v. Dow Chem. Co., No. CIV. 11-117-ART, 2011

WL 2938156, at *2 (E.D. Ky. July 19, 2011)(Thupar, J.)(finding no fraudulent joinder against a

non-diverse store manager where that the complaint alleged that store manager had knowledge

that "sealant was unreasonably dangerous because of complaints that other stores had received");

Hutchen v. Wal-Mart Stores E. I, LP, 555 F. Supp. 2d 1013, 1018 (E.D. Mo. 2008)(Thupar,

J.)(finding no fraudulent joinder against a non-diverse store manager, where the complaint alleged

contaminated spinach was subject to recall in other states and stores).  See also Thompson v. Whole

Space Indus. Co., Ltd., 2010 WL 11643618, at *2 ("There appears to be no reasonable basis in law

or fact for the asserted products liability claim against [the non-diverse defendant] for negligence

---

[31]Schmidt and Dedios also argue that "even if Defendant Short in fact had 'no knowledge
of any alleged safety issues associated with' the defective product, Plaintiffs contend that a
reasonably prudent person in her position should have had such knowledge."  Motion to Remand
at 8 (citing complaint at Short Decl.).  However, whether "a reasonably prudent person in her
position should have had such knowledge" is not the test stated in Brooks v. Beech Aircraft Corp.,
1995-NMSC-043, ¶ 27, 902 P.2d 54, 60; N.M.R.A., Civ. UJI 13-1414; or Restatement (Second)
of Torts § 402.

in the performance of his managerial duties while employed by Target, the supplier of the allegedly defective product."). For example, the Honorable Amul R. Thupar, United States District Judge for the Eastern District of Kentucky, found that, under Missouri law, a store manager could be negligent for selling contaminated spinach, where the store manager was alleged to "continue[] to market contaminated spinach though they knew or should have known of a recall of the product in other states and stores." Hutchen v. Wal-Mart Stores E. I, LP, 555 F. Supp. 2d at 1018 (noting that "knowledge" that "contaminated spinach had been found in other states and stores and had been recalled in other states and stores . . . creates a duty as a matter of Missouri law," and noting that Missouri follows the Restatement (Second) of Torts § 402). Similarly, in Sakura v. Simplicity, the Honorable William P. Johnson, United States District Judge for the District of New Mexico, remanded a case to state court after finding that that a store manager had not been fraudulently joined on a claim of negligence under New Mexico law for "s[elling] and deliver[ing] the crib . . . and provid[ing a] point of sale instructions to" the plaintiffs and "was aware or should have been aware of the dangers associated with the drop-side design and defect, yet . . . failed to warn [the Plaintiffs]." Sakura v. Simplicity, Inc., 2011 WL 1935617, at *2. Sakura v. Simplicity is distinguishable, because here there are no allegations that Short sold, delivered, or provided a point of sale instructions, or was aware of any defects or dangers associated with the toy. See generally Complaint. Furthermore, Judge Johnson did not consider whether a store manager is a supplier or seller for purposes of products liability under New Mexico law. See Sakura v. Simplicity, Inc., 2011 WL 1935617 (noting that the defendants did not respond to the issue of fraudulent joinder). Here, there are no allegations that the Short knew or should have known that the toy was defective, because of a recall, notice of a defect or danger, or other similarly pertinent "information has come to light sufficient to alert the reasonably prudent person." N.M.R.A., Civ. UJI 13-1414. See

Restatement (Second) of Torts § 12.

Instead, Schmidt and Dedios contend that, if Short had conducted a "simple" inspection, she would have had reason to know of the defect.  Complaint ¶¶ 22, at 9-10.  Specifically, Schmidt and Dedios contend that

> Short had or should have had knowledge that products marketed and distributed for use by toddlers should not contain small pieces that a toddler might put into her mouth.  Accordingly, . . . Short should have conducted a basic inspection of the toys it marketed for use by toddlers for obvious choking hazards.  "[A] simple analysis of this particular toy would reveal the obvious danger of equipping a flocked animal with a small removable pacifier," which "invites the end user child to put the pacifier into their mouth."

Reply to Motion to Remand at 12 (quoting Complaint ¶¶ 22, at 9-10).  This formulation of the duty, however, gets it backwards.  The question is not, if Short, as the supplier or seller, had inspected the product for defects, she would have reason to know; rather, the duty to inspect is triggered only when a supplier or seller has reason to know or knowledge of the defect.  See Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 27, 902 P.2d at 60; NM UJI 13-1414; Restatement (Second) of Torts § 402; N.M.R.A; Civ. UJI 13-1414; Restatement (Second) of Torts § 12.  In other words, the reason to know or the knowledge is derived not from the inspection, but from "the fact that the actor has information" about the product "from which a person of reasonable intelligence" would conduct an inspection, and Schmidt and Dedios do not allege that Short had "information," such as a product recall, that would lead a reasonable person to conduct an inspection.  Restatement (Second) of Torts § 12.  See NM UJI 13-1414.  "The phrase 'reason to know' as used in the Restatement does not imply any duty to ascertain an unknown fact."  Burgess v. Montgomery Ward & Co., 264 F.2d 495, 498 (10th Cir. 1959).[32]  Under Schmidt and Dedios'

---

[32]Burgess v. Montgomery Ward & Co., 264 F.2d at 498 cites the Restatement (First) of Torts, which provides the same definition as the Restatement (Second) of Torts for "reason to

formulation of the duty, Short would have to inspect every product to ascertain that there are no design defects, regardless whether Short had any information about possible defects for specific products.  Furthermore, general knowledge that children can choke on small parts does not create a duty to inspect every product for small parts.  Because there is no duty to inspect a product absent knowledge or reason to know that there is a specific defect, there can be no claim of negligence against Short, as a supplier or seller.

## III.   EPOCH EVERLASTING'S NOTICE OF REMOVAL IS NOT PROCEDURALLY DEFECTIVE, BECAUSE IT SATISFIES THE UNANIMITY RULE.

Schmidt and Dedios argue that Epoch Everlasting's notice of removal is procedurally defective, because it fails the "'unanimity rule.'"  Motion to Remand at 11-12 (quoting McShares, Inc. v. Barry, 979 F. Supp. 1338, 1342 (D. Kan. 1997)(Crow, J.), and citing State Farm Fire and Cas. Co. v. Dunn-Edwards Corp., 728 F. Supp. 2d 1273, 1277 (D.N.M. 2010)(Black, J.)).  Schmidt and Dedios contend that the Defendants do not satisfy the notice of removal rule the Honorable Bruce D. Black, United States District Judge for the District of New Mexico, articulated in Farm Fire and Cas. Co. v. Dunn-Edwards Corp., 728 F. Supp. 2d at 1277, because "[n]one of the other Defendants in this case filed their own notices of removal, co-signed Defendant Epoch's notice of removal, or filed a consent to removal.  Nor did Defendant Epoch provide any explanation for the lack of independent and unambiguous consent from any Defendant in its notice."  Motion to Remand at 14.  As the Court stated at the hearing, however, the Court does not apply the same standard as Judge Black, and the Court trusts lawyers in federal court to make truthful and accurate representations whether there is unanimous consent without requiring additional formal

know."  Compare Restatement (First) of Torts § 12 with Restatement (Second) of Torts § 12.

requirements.  See Tr. at 53:14-54:22 (Court); Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d 1243, 1247-48 (D.N.M. 2010)(Browning, J.)(concluding that, strictly construing the removal statute, and with no Tenth Circuit law to the contrary, a notice of removal can be effective without individual consent documents from each defendant).  The Court concludes that Epoch Everlasting's statement that "All Co-Defendants have consented to removal of this matter" in its Notice of Removal satisfies the unanimity requirement.  Notice of Removal ¶ 9, at 4.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *5.  "When there are multiple defendants, generally "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district court remand the case.  See Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981).  Courts generally refer to the requirement that all defendants served at the time of filing must join in the notice of removal as the unanimity rule or the unanimity requirement.  See Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d at 1247-48; McShares, Inc. v. Barry, 979 F. Supp. at 1342. The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.); Fed. R. Civ. P. 19, 20.  The defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. at 230-32.

The Court has stated: "[W]hile the federal courts strictly construe the removal statutes and there is a presumption against removal, the Court should not use these rules of construction to manufacture rules that Congress did not require, that are not necessary to enforce the statutes, and

are contrary to normal federal practice." Roybal v. City of Albuquerque, 2008 WL 5991063, at

*8 (D.N.M. Sept. 24, 2008)(Browning, J.).   "Strict construction and resolving doubts against

removal does not mean the courts should be hostile to the Congressionally created right to removal,

creating procedural hurdles that Congress did not create and that provide pitfalls for all but the

most experienced federal court litigants." Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d at 1255.

In Tresco, Inc. v. Continental'l Casualty. Co., the plaintiff filed suit against defendants National

Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Continental

Casualty Company ("CNA").  727 F. Supp. 2d at 1245.  National Union filed a Notice of Removal

with the federal court within thirty days of when it was served.  See 727 F. Supp. 2d at 1245.  Its

Notice of Removal stated that National Union obtained CNA's consent to removal.  See 727 F.

Supp. 2d at 1245.  Thus, National Union obtained unanimity.  See 727 F. Supp. 2d at 1245.  The

plaintiff moved the Court to remand, arguing that CNA did not indicate his consent by signing the

notice of removal or by filing a separate document indicating consent within thirty days of the date

that defendant was served.  See 727 F. Supp. 2d at 1245.  The Court denied the motion to remand,

holding that neither the statute nor the Tenth Circuit requires a separate signature or signed

document to indicate consent.  See 727 F. Supp. 2d at 1245.  The Court concluded that not requiring

each defendant either to sign the removal petition or independently to submit a notice of consent

in writing did not run counter to the principle that removal statutes be strictly construed, with all

doubts resolved against removal, because the statute is not ambiguous, but silent.  See 727 F. Supp.

2d at 1255.  The statute does not require the rule that the plaintiff requested.  See 727 F. Supp. 2d

at 1255.  The Court concluded that, strictly construing the statute, with no Tenth Circuit law to the

contrary, a notice of removal can be effective without individual consent documents from each

defendant.  See 727 F. Supp. 2d at 1255.  The Court recognized that federal courts often rely on

representations of counsel without requiring separate signed documents, and concluded that those

representations are sufficient in the removal consent context:

> "[F]ederal courts often rely on the representations of counsel about other parties. . . . [P]arties frequently submit unopposed motions, stating that the other parties do not oppose.  Rarely is there any problem, and if there is, a federal court has an abundant reservoir of powers to remedy misrepresentations. Representations by counsel, signed under rule 11, are sufficient to deal with the primary concern animating the judicial creation of restrictions on removal."

Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d at 1250 (quoting Roybal v. City of Albuquerque,

2008 WL 5991063, at *8).  Other courts follow similar requirements.  See, e.g., Griffioen v. Cedar

Rapids and Iowa City Ry. Co., 785 F.3d 1182 (8th Cir. 2015)("hold[ing] that a defendant's timely

removal notice indicating consent on behalf of a codefendant, signed and certified pursuant to Rule

11 and followed by the filing of a notice of consent from the codefendant itself, sufficiently

establishes that codefendant's consent to removal"); Mayo v. Board of Educ. of Prince George's

County, 713 F.3d 735 (4th Cir. 2013) ("conclude[ing] that a notice of removal signed and filed by

an attorney for one defendant representing unambiguously that the other defendants consent to the

removal satisfies the requirement of unanimous consent for purposes of removal").  See also 14C

Fed. Prac. & Proc. Juris. § 3730 (Rev. 4th ed.)(citing cases and noting that some "courts also have

agreed to relax the specific requirement that each defendant file a written consent with the notice

of removal").

Here, the facts are similar to Tresco, Inc. v. Continental'l Casualty. Co., 727 F. Supp. 2d

at 1245-55: Schmidt and Dedios filed suit against the Defendants in state court, see Notice of

Removal at 1; Complaint at 1, and Epoch Everlasting filed a Notice of Removal with the Court

within thirty days of when it was served, see Notice of Removal at 1.  The Notice of Removal

states: "All Co-Defendants have consented to removal of this matter."  Notice of Removal ¶ 9, at

4.  Moreover, Walmart and Short filed a Joinder of Removal on November 4, 2019 and aver that they had provided written consent to Epoch Everlasting on October 2, 2019.  <u>See</u> Defendants Walmart, Inc. and Marie Short's Joinder in Removal Notice of Removal, filed November 4, 2019 (Doc. 21); Email Dated October 2, 2019, filed November 4, 2019 (Doc. 21-1).  There is nothing in the record that indicates that Epoch Everlasting's representation is inaccurate, that a Defendant has not consented, that a Defendant does not wish to be in federal court, or that a Defendant has changed their mind.  The Defendants want to be here.  The Notice of Removal, therefore, satisfies the unanimity requirement.

   **IT IS ORDERED** that: Schmidt and Dedios' Motion to Remand, filed November 4, 2020 (Doc. 18), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John F. Walker
Martin Walker, P.C.
Tyler, Texas

--and--

Justin Ross Kaufman
Rosalind Bienvenu
Durham, Pittard & Spalding, L.L.P.
Santa Fe, New Mexico

   *Attorneys for the Plaintiffs*

Gregory L. Biehler
Lewis Brisbois Bisgaard & Smith L.L.P.
Albuquerque, New Mexico

   *Attorney for Defendant Epoch Everlasting Play, L.L.C.*

- 101 -

Jeremy K. Harrison
Kevin D. Pierce
Modrall Sperling Roehl Harris & Sisk P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Walmart Inc. and Marie Short*